BENJAMIN ARBUCKLE *v.* HEZEKIAH WARD.

*Prescription.    Right by prescription to obtain water from another person's spring.*

The extent of a right which is acquired in the land of another by a use of it for fifteen years is to be determined by the claim of the party using it, and the acqui-escence of the other.

If the use originated in and has been consistent with a contract, ref rence must be had to the contract for ascertaining and determining the right; the claim of the one party and the acquiescence of the other being presumed to be in accordance therewith.

Where no contract is shown, and the use came to the knowledge of the adverse party, or was so open and notorious that such knowledge would be presumed, the use will be presumed to have been under a claim of right, unless the contrary is shown.

That the use originated in a permission will not prevent its becoming a right by prescription, if continued for fifteen years, if the permission was of a perpetual or unlimited character.

In the present case the owner of a spring of water agreed that the grantor of the plaintiff might *always* or *forever* draw water from the spring for the use of his house, by bearing a proportionate part of the expense of an aqueduct through which the water was to be carried both to the house of the plaintiff and to that of the owner of the spring; and under this agreement the plaintiff and his grantors did so obtain and use water from the spring for a period of more than fifteen years without interruption. *Held*, that the plaintiff thereby acquired a right by prescription to so obtain and use said water.

The acquirement of this right was not interrupted by the death of the owner of the spring who made the agreement, after a use of the water under and in pursuance of that agreement had been commenced, if his heirs or devisees or their grantees did not interfere until after the use had been continued for fifteen years.

After the death of the owner of the spring, his widow, who had become entitled both to the spring and to the house which was supplied with water from the spring by the same aqueduct with the plaintiff, and a continuation of it, sold the land where the spring was, but reserving the right to take the water from the spring to her house during her life. *Held*, that this did not interfere with, or in any way affect the right or the claim of the plaintiff to the water used by him.

Where by the original agreement, and the commencement of the use of the water under it, three houses were supplied through the same aqueduct for the construction and repair of which the plaintiff was to be at one-third of the expense, and subsequently but two families were supplied, and the plaintiff consented to and did bear one-half of the subsequent expenses of maintaining the aqueduct; *it was held* that this modification of the plaintiff's proportion of said expenses did not interrupt or interfere with his acquiring a prescriptive right to the use of the water.

ACTION ON THE CASE for diverting the water flowing in an aqueduct leading from a spring on the defendant's land to the plaintiff's house. Plea the general issue; trial by jury, March Term, 1856,—POLAND, J., presiding.

The plaintiff read in evidence copies of deeds,—James H. Langdon to Francis Davis, dated July 10, 1823, of a small piece of land and house, in Berlin, being the same upon which the

plaintiff afterwards lived; Francis Davis to Daniel W. Fox, dated 12th of February, 1828 ; Daniel W. Fox to Luther Cross, dated 8th of February, 1833 ; Luther Cross to Joseph Arbuckle, dated 24th of July, 1834; and Joseph Arbuckle to the plaintiff, dated 17th of December, 1836 ; all conveying the same premises. The plaintiff then introduced evidence tending to prove that in 1826 or 1827, Francis Davis, who then owned and lived on the premises, George Bradshaw, who owned a house and premises adjoining, and Judge Buckley entered into an agreement to bring water in logs from a spring on land owned by Buckley, for the supply of their respective houses. Buckley was to give the spring; and the expense of bringing the water from the spring to Davis' house, which was nearest the spring, was to be borne equally by the three; from Davis' house to Bradshaw's, the expense was to be paid equally by Bradshaw and Buckley ; and from Bradshaw's to Buckley's, by Buckley alone; and the three were to share equally in the water. It was also agreed, that if either of the parties at any time became dissatisfied with this arrangement for getting water, he might give up his right to the other two. The evidence tended to show that this arrangement was understood to be lasting and permanent, and that it was not understood that Buckley had a right to prevent the others from drawing water from the spring whenever he chose. The depositions of Francis Davis and Daniel W. Fox were read, in which Davis testified that " Buckley agreed to give the use of the water from the spring forever, provided that myself and Bradshaw would be at one-third of the expense of the conveyance of the water," and that he also agreed " to make a deed or contract, conveying the right to the spring forever, according to the agreement ;" and Fox testified that Buckley told him that " Davis was to have the use of the spring always, by bearing one-third of the expense of bringing the water to the house," and that he, Fox, " should have the same privilege on the same conditions ;" George Bradshaw was also a witness ; and his testimony was in substance the same as that of Davis, except he had no recollection of anything being said about Buckley's giving a writing, or that the word *forever* was used in the agreement. This was all the evidence

there was upon either side as to the agreement under which the original aqueduct was laid down.

Immediately after the agreement was made, the aqueduct was laid down, and water brought to the houses of the three, and the expenses were borne according to the agreement, and the necessary repairs of the aqueduct were made in the same proportion. In 1836 Judge Buckley died, but his widow continued to occupy the same house, and the water continued to run to the three houses as brought originally, up to about 1840 or 1841, when Bradshaw, who had some difficulty in getting his part of the water, as his house was higher than either of the others, concluded to procure water from another source, and gave up his right in the aqueduct and water. At this time a change was made from the plaintiff's house to Mrs. Buckley's, the logs being laid in a direct line instead of by Bradshaw's, and some repairs were made between the plaintiff's house and the spring by the plaintiff and Mrs. Buckley jointly. The water continued thus to run to the plaintiff's house and to the Buckley house until 1848. Up to this time, it did not appear that any question had ever arisen as to the precise share of water each drew or was entitled to draw, or as to the right of the plaintiff to draw water from the spring at all. When the logs were in repair there was a sufficient supply of water for all; and when they got out of repair they were soon repaired by the parties according to their agreement and practice. In 1847 the defendant became the owner of the land on which the spring is situated, and in 1848 he erected a house thereon, and laid down an aqueduct of logs from his house to the aqueduct leading from the spring to the plaintiff's house, and inserted the same in the side of said old aqueduct, about half way from the spring to the plaintiff's house, and nearly at right angles with it, and took a portion of water therefrom, and carried to his buildings; and ever after that time supplied his buildings with water from that aqueduct. Mrs. Buckley died in 1849, and the Buckley house became the property of one Fifield; and in the fall of 1849 the plaintiff and Fifield put a lead pipe in said aqueduct from the Buckley house up to near the point where the defendant's aqueduct was connected with the main one. This lead pipe was half an inch

in diameter, except seven or eight rods at the upper end, which was three-eighths of an inch in diameter; this lead pipe was drawn through the old logs, which were bored an inch and a half in diameter. Fifield paid the whole expense from the plaintiff's house to his, and he and the plaintiff shared equally in the expense above the plaintiff's house.

The plaintiff gave evidence tending to show that in the winter following the laying down of the defendant's aqueduct, the water failed at his house, and that ever since that time the water has not run in said aqueduct to his house but a portion of the time, and that this had been occasioned by the drawing off the water from said aqueduct by the defendant by his branch, and that in 1852, in consequence of the unsteadiness of the supply of water through this aqueduct, one Beebe, who had become the owner of the Buckley house, took up the pipe from his house to the plaintiff's, and procured water elsewhere. The plaintiff's evidence also tended to prove that he and his grantors, ever since the aqueduct was laid down, had always claimed a permanent right to draw water from the spring, according to the original agreement.

The defendant gave in evidence the will of Judge Buckley, and the probate of the same, by which he devised the land now owned by the defendant, on which the spring is situated, to the American Education Society, and his house to his wife, Eunice Buckley; a deed from the American Education Society to Mrs. Eunice Buckley, dated September 26, 1837, of the land upon which the defendant now lives; a deed from Eunice Buckley to Stewart Brown, dated April 16, 1840, of the same land, reserving the right to take the water from the spring to her house during her life; the probate record of Stewart Brown's will, devising the same land to Mrs. Clara Burton; and a deed of the same land by Mrs. Clara Burton to the defendant, dated March 24, 1847, containing the same reservation of the spring for Mrs. Buckley.

The defendant then introduced testimony tending to prove that the three-eighths of an inch lead pipe laid down by the plaintiff and Fifield in 1849, was unsuitable and improper to carry water in through an aqueduct; and also evidence tending to show that the plaintiff had not exercised proper care in the management of his aqueduct to keep it clean and free for the uninterrupted flow of

water; and that the defendant's aqueduct was so arranged and connected with the main aqueduct, and guaged, as to allow at least one-half the water from the spring to flow to the plaintiff's house, if his aqueduct was so arranged as to allow it to do so. The defendant's testimony also tended to show that in 1849, when the plaintiff and Fifield put down their lead pipe, the defendant made some alteration in his aqueduct, and some new arrangement at the connection between his aqueduct and the main aqueduct, and that the plaintiff being then present, assisted the defendant in arranging the connection, and bored the hole in the main log in which the defendant's was inserted ; and that the defendant's aqueduct and the connection has remained substantially the same ever since, and that the plaintiff had never notified the defendant of any specific change or alteration he wished him to make in his aqueduct or mode of taking the water.

The plaintiff's counsel claimed and requested the court to charge the jury that the plaintiff had acquired a right by prescription to have all the water continue to run through said aqueduct to his house, which had formerly run there, and that the discontinuance of the use of the water by Bradshaw and the owners of the Buckley place, had not altered that right; and that the defendant had no right, without permission of the plaintiff, to tap said main aqueduct at all, to take any portion of the water therefrom.

The defendant's counsel requested the court to charge that, if by the terms of the original agreement between Buckley, Davis and Bradshaw, the parties, were to have a permanent right to take the water, still as this agreement was not in writing and under seal, it could operate only as a license from Buckley, and would be revokable at his pleasure, and that if the plaintiff's grantors and himself drew water from the spring for more than fifteen years continuously, claiming a permanent right to do so under said agreement, they could never acquire a right to draw water by pre-scription; that in order to do this they must repudiate the agree-ment and give notice thereof to Buckley or his grantees, and that as this had never been done, the plaintiff had acquired no pre-scriptive title. 2. That if fifteen years had not elapsed when Brad-shaw ceased to use the water, the subsequent use by the plaintiff could not be connected with his prior use to make the legal period

for a prescriptive right to the water. 3. That the plaintiff could not be acquiring any right to the water, by prescription, after Mrs. Buckley deeded to Brown, in 1840, and made a reservation of water thereby, during her life time. 4. That if the plaintiff consented to the mode of the construction of the defendant's branch, and this mode of construction diverted the water as the plaintiff claimed, still the plaintiff could not recover unless he had complained to the defendant of the mode of construction. 5. That if the water would have continued to run in the plaintiff's aqueduct sufficiently if he had continued it with logs with an inch and a half bore, as when the defendant inserted his branch, that the defendant was not chargeable in this action.

The court charged that the agreement between Buckley, Bradshaw and Davis, not being in writing, would not have the effect to convey any legal right to them, and that, at law, Buckley might have put an end to it at any time within fifteen years; that the plaintiff's right depended upon the *character of his use and claim to the use* of the water, whether it was under a claim of a permanent right, or as a matter of favor or license from Buckley that he might revoke or recall at any time; that if by the agreement it was understood that the parties were to have a permanent and lasting right to draw water from this spring as long as they chose, and the plaintiff and his grantors had continued under said agreement to draw water for a continuous period of more than fifteen years, then the plaintiff had acquired a prescriptive right to take the water from the spring; and that, if fifteen years had not run when Bradshaw retired, the plaintiff's subsequent use of the water might be added to his former use to make out the period; and also that the plaintiff's right would not be affected by the conveyance from Mrs. Buckley to Brown and the reservation in her deed, or in Mrs. Burton's deed, to the defendant. In relation to the extent of the right the plaintiff had acquired, if any, the court told the jury that the plaintiff would not be entitled to have the whole quantity of water flow to his house, which had formerly been used by Bradshaw and Buckley, and his successors, but that he had acquired a right, if at all, to such proportion of the water of the spring as he had used and claimed for fifteen years or more; and as the evidence did not show that he had used or

claimed more than one-third of the water, his right should be limited to that; that when Bradshaw and Buckley's successors relinquished their rights, they reverted to the owner of the spring, and that the plaintiff could not legally insist on having the whole water flow to or by his house, which he did not use; and that the defendant being the owner of the spring might use it where he chose, provided he did not thereby work any injury to the rights of the plaintiff. The court also charged the jury that if the failure of the water in the plaintiff's aqueduct was occasioned by any improper or unsuitable arrangement of his aqueduct, or by having an improper or unsuitable pipe, or by reason of his want of proper care in cleansing the same, then he could not recover; that to entitle the plaintiff to recover, he must show that the loss of his proportion of the water was occasioned by the defendant's aqueduct; that if the plaintiff assented to any particular arrangement of the defendant's pipe, which was injurious to him, he could not recover for any damages thereby occasioned until he had first given notice of his wish to have it removed or changed so as not to work an injury to him.

Under these instructions the jury returned a verdict for the plaintiff. Exceptions by the defendant.

*Merrill & Willard* and *Peck & Colby* for the defendant.

No prescriptive right could be acquired by the plaintiff.

The presumption of a grant is never to be made, except to account for what would otherwise be contradictory to the probable intent and interests of the parties; and never should be made where the enjoyment is consistent with the right of the owner of the servient tenement. *Arnold* v. *Stevens*, 24 Pick. 106; *Ricard* v. *Williams*, 7 Wheat. 109.

But in the case at bar, it was for the interest of Buckley that the joint user should be continued, as his neighbors were aiding him to carry the water to his own house, and there was water enough for all till 1848.

The case shows that the whole agreement was a kind of parol agreement of partnership for the mutual benefit of the three neighbors. And it is unjust and contrary to the policy of the law of easements to allow a prescription to be sprung upon a party by

an enjoyment not adverse to his interests, and under an agreement that he might put an end to, at any time, and would have done so if required by his interests.

The agreement was only a license. *Bridges* v. *Purcell,* 1 Der. & Bab. (N. C.) 492. The best that the plaintiff can claim is a contract of purchase and sale, and such a possession is not adverse. *Ripley* v. *Yale,* 18 Vt. 221.

The obligation to aid in repairs likens the case to the relation of landlord and tenant.

The plaintiff is bound by his acquiescence in the defendant's aqueduct. In 1849 he assisted to make the very connection that now is complained of, and he has never requested any particular change in the construction. The only claim he ever made was that he had a right to have all the water run to his house. The acts of the parties operate as a partition of their interests. *Corning* v. *Gould,* 11 Wend. 531; *Taylor* v. *Hampton,* 4 McCord 96.

*Heaton & Reed* for the plaintiff.

I. Fifteen years of adverse possession and occupancy of land or water gives a title by prescription in this state. *Mitchell* v. *Walker,* 2 Aik. 266; *Haight* v. *Proprietors of Morris Aqueduct,* 4 Wash. Cir. Ct. 601, 7; *Watkins* v. *Peck,* 13 N. H. 360, 371; *Coolidge* v. *Larned,* 8 Pick. 504, 508; *Harard* v. *Robinson,* 3 Mason 272, and cases cited; *Tyler* v. *Wilkinson,* 4 Mason 397, 402; 3 Kent's Com. 442-3-4-5; *Bealey* v. *Shaw,* 6 East 208; *Gayetty* v. *Bethune,* 14 Mass. 49, 53.

2. That the presumed grant is upon conditions, or subject to limitations, does not defeat the presumption. *Watkins* v. *Peck, supra,* 375; *Mitchell* v. *Walker, supra; Boliver Manf. Co.* v. *Neponsett Manf. Co.,* 16 Pick. 241.

3. Presumption of a grant arises from fifteen years enjoyment by privies in estate. *Sargent* v. *Ballard,* 9 Pick. 251; *Melvin* v. *Whitney,* 13 *id.* 184, 188.

II. The plaintiff and his grantors had acquired such rights as equity will enforce. *Rerick* v. *Kern.,* 14 Serg. & R. 267; 5 Watts 308; 2 Story's Eq. secs. 761-2-3; *Pope* v. *Henry,* 24 Vt. 560; *Hall* v. *Chafee,* 13 Vt. 150, n. by Redfield, J., 157-8.

III. The purchase by the defendant and his grantors was of an interest in the possession of the plaintiff and his grantors, and therefore with constructive notice of their title. *Rublee* v. *Mead,* 2 Vt. 254; *Griswold* v. *Smith et als.,* 10 Vt. 452; *Pope* v. *Henry,* *supra.*

The opinion of the court was delivered by

REDFIELD, CH. J. The general rule of law by which the right to draw water from a fountain or spring upon the land of another, and through the land of the owner of such spring, and to dig in the soil for the purpose of repairing or relaying the aqueduct, may be acquired by fifteen years' uninterrupted use, under claim of right, is familiar law in this state.· And that this use will fix and define the mode and conditions of such right we have no doubt. As if the party has been accustomed to repair the aqueduct and to allow the owner of the land to take water from the same. This use will define the amount of water which the party has the right to take. These points are all familiar law, and have been expressly decided. *Watkins* v. *Peck,* 13 N. H. 360, seems to cover all these points. The extent of the right acquired by fifteen years' use will depend upon the claim of the plaintiff, and the acquiescence of the defendant, (and those from whom he derives title,) in such claim.

For the purpose of showing both the claim and the acquiescence, the original contract by which the use originated is ordinarily the best of evidence. And if clearly proved, and the use has all along been consistent with the original contract, it ought to be referred to it, and not be allowed to establish a right to either more or less; for it may well be presumed that the parties have acted in faith of the original contract. And the effect of the use will be to establish the rights of the parties according to the terms of the contract, and, by prescription, to give it the same validity and force as if it had been originally by deed, in due form. As if the contract originally allowed the party to use water for one house, or such quantity as the owner of the land did not require for his own use, and the use has been consistent with such conditions, it will be regarded as so qualified.

But it is not essential to the prescription that any original

contract should be shown. For the mere use, if so open and notorious as obviously to attract the notice of the owner of the soil, or if expressly shown to have come to his knowledge, will *prima facie* establish the right, and it will be incumbent upon the owner to show in some mode that it was not used under a claim of right to the water, or that he did not so understand it, and was not bound to so regard it from the nature and extent of the use. But the mere fact of showing that the use begun by permission of the landowner is not alone sufficient to defeat the prescription. For if the permission was a perpetual gift, or an unlimited gift or permission to use, and continued for fifteen years, the right is perfected.

This is analogous to the statute of limitations by the possession of land. If the party enters into the use of land under any form of tenancy, he is acquiring no right by his continued occupancy. For the tenancy implies the recognition of the permanent right of the landlord. But if he enter as a purchaser, having paid the full price, or under a gift, fifteen years' possession perfects his title. But if payment of the price was a condition of the title or right to retain possession, this condition must be complied with. So that the terms of the contract by which the party entered are of paramount importance in determining the rights acquired by the use or possession. And the occupancy must have been under claim of right. These general principles seem to us to be established by the uniform course of the decisions upon the subject, and to be recognized by all the elementary writers, and not to require particular confirmation by citations of authority. They are, so to speak, the fundamental principles of the law of prescription.

II. In regard to the application of these principles to the present case, it seems that the testimony on the part of the plaintiff tended to show " Buckley was to give the spring," *i. e.*, to devote it to the common use of the three persons, or to give it to each, to the extent of his particular wants. Some of the witnesses say that the form Buckley adopted in expressing the right of the plaintiff and his grantors was " that Davis was to have the use of the spring always, by bearing one-third of the expenses of bringing the water to his house," &c. Davis himself testified that " Buckley agreed to give the use of the water forever" on the condition above

named. Under this grant Davis and his grantees have used the water more than fifteen years without interruption. And by the charge of the court the jury must have found that, by the original agreement, the plaintiff and his grantors were to have a permanent and lasting right to draw water from the spring, and they had so claimed and exercised it for more than fifteen years without interruption, unless by the interposition of the estate which will be noticed hereafter.

We think, therefore, that the plaintiff's right did become perfected, so far as the nature of his use and claim of right is concerned. That is all which could be expected in any case. It is not like the case of a use of water from year to year upon a rent, or by the mere indulgence of the owner without rent, which could create no right, as was fully explained to the jury. Nor was it necessary to submit to the jury the question of a grant, for the prescription of right is perfected by the fifteen years' use, with the claim of right and the acquiescence of the owner of the land. Nor does it seem to us that the fact that Buckley used the water jointly with the plaintiff, will defeat the presumption arising from his use and that of his grantors. It might affect the question of evidence to some extent. It might render it more probable that it was merely a permissive use intended to be temporary, and revocable at will, in fact as well as in law. But the fact being found that the plaintiff and his grantors used the water under a claim of a permanent right, and that Buckley and his grantees acquiesced in such right or claim of right, it certainly could not defeat the prescription that the ground of the acquiescence was that the plaintiff and his grantors should bear one-third or one-half of the expense of bringing the water to the plaintiff's house; although it might have the effect to impose that as an obligatory condition of the right to use the water.

If one should allow another to occupy land which he owned in fee, as tenant in common under a contract to give him an undivided moiety of the land, and this occupancy should be continued fifteen years under a claim of ownership as tenant in common, and this acquiesced in by the owner, the title would undoubtedly become perfected.

III. The decision in *Ripley* v. *Yale*, 18 Vt. 221, goes no

further, we apprehend, than to determine that the vendee of land entering into possession is presumed to hold in subordination to the title of his vendor until he pays the price agreed; *Greenough* v. *Munson*, 9 Vt. 37. But if he pays the price down, or enters as a donee of the land, and continues to hold under such claim for fifteen years, there can be no doubt he acquires perfect title.

IV. But it has been objected, that this use has been covert. We do not perceive any thing of that character in the nature of the use. It is the ordinary form of taking water from a spring, so far as we know. And we suppose it could hardly fail to come to the knowledge of the occupier of the land. It seems very obvious that it was in fact known to Buckley, and to Mrs. Buckley and her grantees. That is, it was known to each of them that such a spring existed, and that there was an aqueduct connected with it. We do not think the state of the evidence raised any doubt upon the point of knowledge, or that it should have been put to the jury.

V. We know of no rule of law by which the death of Buckley would interrupt the prescription, any more than the casting of a descent or the intervening of any other estate should interrupt the running of the statute of limitation in other cases, when it has once begun to run which is not claimed; nor is any authority cited to show that Buckley's death should have this effect in this case. We think it cannot.

It is true the heirs or devisees of Buckley might then have interfered. But unless they did the prescription must continue to run, unless at the least they showed some inability to interfere.

VI. In regard to the reservation in the deed of Eunice Buckley to Stuart Brown, excluding him, as is claimed, from all use of the spring during the life of Mrs. B., we do not so understand the reservation. It is, in terms, a mere reservation of the right to take water in the aqueduct, in the same manner it then was, to her house. This did not cover the whole water, or the water used by the plaintiff. Brown might have sued the plaintiff, or cut off the water the next day. It would seem from 2 Greenl. Ev. sec. 545, *Cross* v. *Lewis*, 2 B. & C. 686, that even if it had reserved the spring it would not have interrupted the prescription, although, no doubt, the existence of such a disability would have the effect to

defeat it if existing at the time the prescription begins, unless brought to the knowledge of the owner of the fee, and unless the adverse use is of such a character as to give a right of action to the owner of the fee. But it is not needful to decide these questions here, as they do not properly arise.

VII. We do not perceive why the defendants did not obtain the benefit of their evidence in regard to any defect of the mode of carrying the water by plaintiff in a lead pipe, or of his assent to the defendant's taking the water, and taking it in the mode he did, by the charge given to the jury. The form of the charge is not important; it is the substance only which we attempt to revise. Nor is the party entitled to dictate the particular form in which such questions shall be brought to the consideration of the jury. And there certainly did not seem to be any evidence in the case tending to show that the plaintiff understandingly, or to the misleading of the defendant, assented to the defendant's use of the water, except in subordination to his own right, or that in assisting in inserting the defendant's conduit, he could fairly be said to have absolutely bound himself to abide the consequences, or that the defendant so understood him or was misled in any degree by that circumstance. But if there were any doubt whether the evidence had any such tendency, it all seems to us to have been properly submitted to the jury, and we could not feel justified in ordering a new trial upon that ground.

VIII. We do not comprehend how Bradshaw's going out of the concern could effect the plaintiff's right to the water. That continued the same as before; the use was the same as far as we can learn from the testimony, and the claim seems to have been found by the jury to be the same through the full term of fifteen years; that is a claim of a perpetual and permanent right. The modification of the proportion of the expense after Bradshaw went out, might raise some question whether, at the end of the first fifteen years, the plaintiff was bound conclusively to be at half the expense of the aqueduct to his own house, as he had not borne that proportion for the full term. But probably his having assented to that modification would affect the claim of right from the beginning.

IX. Those cases in which it is laid down that, where the use is by permission of the owner of the dominant tenement, no right is

acquired, require to be understood with some qualification, and are to be limited to the time when the permission is given, or else to the kind of permission. It is undoubtedly true that if one have enjoyed an easement ever so long under what is apparently a claim of right, if he then ask permission of the owner of the land for the continuation of such easement, this defeats his former prescription, and should attach, perhaps, a similar quality to his future enjoyment, i. e., that it is held by the continued permission of the owner of the land.

So too in regard to the kind of permission by which the enjoyment begins ; if it is for a rent, or temporary, what the civil law denominates a "precarious enjoyment," no right is acquired. But if it be a permission by gift or upon sale, with an acknowledgement of the price paid, it is none the less an enjoyment of the easement under claim of right and with the acquiescence of the owner of the land in the existence of the right. And this is precisely what is requisite to create a prescription. Permission and acquiescence in this sense are synonymous and are of the very essence of a prescriptive right when continued for the term of the statute of limitations.

Judgment affirmed.