Vermont Superior Court
Filed 09/03/24
Caledonia Unit

| VERMONT SUPERIOR COURT | | CIVIL DIVISION |
|---|---|---|
| Caledonia Unit | | Case No. 21-CV-00942 |



Caledonia Unit
1126 Main Street Suite 1
St. Johnsbury VT 05819
802-748-6600
www.vermontjudiciary.org

---

Amy Logue et al v. Katherine Richmond

---

# FINDINGS, CONCLUSIONS, AND JUDGMENT

This matter concerns a spring box located on Plaintiff Scott Bedell's property that serves as Defendant Katherine Richmond's water supply.[1]  Plaintiff Bedell challenges Defendant Richmond's right to use this spring, and to the extent one exists, the scope of that easement.

A spring box is a structure made of stone, concrete, brick, or other type of impervious material that is erected atop a natural spring.  The purpose of the spring box protects the water from surface contamination, including runoff, and contact with humans or animals.  At the bottom of the spring box, there is an outlet connecting to a piping system that allows the spring water to flow from the spring to the user's house, barn, or yard where the water can be stored and used, and in more recent times, usually where it is treated for any contamination.  *Clark v. Conroe's Estate*, 38 Vt. 469, 475 (1866) (finding that landowner's predecessor in title had deeded the spring to another who had taken and drained water from the spring "by means of logs" to the adjoining premises).

In this case, the evidence shows a long and well-established history of Defendant Richmond and her predecessors in title using the spring on Plaintiff Bedell's property and improving the spring box over time at that location.  This right is reflected in some of the relevant deeds, and there is no serious question that she has a right to continue to draw water from the spring box on Plaintiff's property and perform maintenance to the spring box and pipelines as necessary, including but not limited to, repairs and replacement of the box and lines.  While this right is not without limitations, the ownership and right to use, draw water, and repair or maintain the mechanisms of the spring box on Plaintiff Scott Bedell's

---

[1] Plaintiff Bedell was originally joined in this action by his wife and co-owner, Amy Logue, who passed away before this matter came to trial.  There is no dispute that Mr. Bedell is the proper party and has the full right to continue this claim as the sole owner of the property.

property lie with Defendant Katherine Richmond as owner of the property at 275 Locust Ridge Road in Kirby, Vermont.

**Findings of Fact**

Both Plaintiff Bedell's and Defendant Richmond's properties were once part of a larger 256-acre parcel, which was used primarily for dairy farming. While the properties have, since their subdivision, been developed to varying degrees, the house that Richmond occupies on her parcel was the house that prior owners of the larger parcel occupied and used as the primary farmhouse.

Robert Hamel of Lyndonville credibly testified that his family owned the 256-acre property from the 1940s through the 1960s and used the Richmond house as their primary residence. Hamel testified that when his parents purchased the property in 1946, the water for the house came from the spring, which was housed under a stacked-stone spring box. Mr. Hamel stated that this spring was the only source of water for his family and their livestock when they lived in the house currently owned by Richmond.

Hamel also testified that in the early 1960s the stacked-stone spring box was beginning to sag with age and develop holes and cracks. At that time, the Hamels' milk processors required them to improve the spring box to avoid contamination amongst the herd. Hamel stated that in the spring of 1962, right before he went into the army, he helped his father and brother build a new spring box out of concrete. This 1962 spring box is the same spring box currently on the Bedell property and currently providing water to the Richmond house.

Hamel also testified that he dug up portions of the water line, which were constructed from cedar logs hollowed out with lead lining, and he replaced them with more modern water pipes. Hamel stated that the water from the spring supplied continuous and sufficient water to sustain the house and herd. The Court finds Mr. Hamel's testimony to be truthful and detailed. His testimony establishes that the Richmond house has been served by the spring on Bedell's property for more than 80 years, and that the spring has provided adequate and sufficient water for both a family occupying the house as well as a dairy herd.

At some point after the late 1960s, the owners of the 256-acre parcel subdivided and sold off portions to different owners. In 1992, the Lyndonville Savings Bank and Trust (the "Bank") acquired one of these subdivided parcels, an 85-acre portion that included both the Richmond house and the hillside where the spring box is located. The Bank subdivided this parcel further and severed the farmhouse and spring. On July 6, 1994, the Bank sold a 21.6-acre parcel that contained the Richmond farmhouse to

Elizabeth Hubbard through a quitclaim deed recorded in the Town of Kirby Land Records at Book 20, Pages 387–89. While this deed did not specifically reserve spring rights, it did include a Habendum Clause, which included the language "TO HAVE AND TO HOLD all our right and title in and to said quit claimed premises, with the appurtenances thereof . . ."

The Bank sold the remaining land, including the portions with the spring on it to the Lyndon Institute, Inc. on October 14, 1994. The Institute sold it to Steven and Paula Gabrault who sold it, in turn to William and Judee Szymansky on March 8, 2003. The Szymanskys subdivided the property, and sold 28.96 acres, including the portion of the property with the spring box to Scott Bedell and Amy Logue on October 8, 2011. At the time of purchase Szymansky showed the spring box to Bedell and told him that it served the property and farmhouse that had been owned by Hubbard.

Elizabeth Hubbard credibly testified that she lived on her property for 13 years from 1994, until she sold the property in 2007. During this time, her only water source was the spring, and she performed regular maintenance on the spring box—going up to the spring box at least twice a year. She also testified that she did regular maintenance and repairs on the waterline from the spring box to her house, replacing segments as necessary. The evidence shows that during this time, the Szymanskys relocated a portion of the waterline and recorded this adjustment as part of a 2006 Wastewater permit application. In that application, they identify the waterline as part of the system that provided water to "Elizabeth Hubbard's farmhouse."

Elizabeth Hubbard subdivided her property into three parcels, including the 5-acre parcel with the farmhouse and a 11.3-acre parcel that lies between the 5-acre farmhouse parcel and the Bedell property. Hubbard reserved the right to run a water line for the benefit of the farmhouse across the 11.3-acre parcel.

In 2007, Hubbard conveyed the 5-acre farmhouse parcel to Valentine and Donna Davis who lived and occupied the property until 2019, when they lost the property to a foreclosure. During the Davises' tenure at the property, they continued to use the spring as the sole source of water for the property. They performed regular water testing, and they would periodically go up to the spring and shock the system with chlorine tablets to kill any bacteria in the spring box.

Katherine Richmond took title to the property on May 20, 2020 from the entity that had foreclosed the prior year on the Davis family. Richmond has lived at the property continuously and used the spring as her sole water source. She has performed maintenance on the system, including the installing a new lid on the spring box in late 2020.

Bedell presented testimony through Jenn Gould that Richmond could drill a well on her property for approximately $15,000. Gould also credibly testified that a well is a superior source of water to a spring because it is less likely to have contamination from surface sources.

## Legal Conclusions

### A. *Joinder of other landowners*

As a preliminary matter, Plaintiff Bedell raises an issue that no relief should go to Defendant Richmond concerning the spring for failure to join an indispensable party, namely Laura Todd, the owner of one of the parcels between Richmond and Bedell whose lands are also burdened by a portion of the waterline running from the spring to the Richmond house. Under Rule 19, joinder of third parties are only required if the joinder is (1) feasible and (2) the absence of the party prevents complete relief or their absence impairs or prevents the third party's ability to protect their interest or raises a threat of incurring multiple or inconsistent obligations. V.R.C.P. 19. Plaintiff Bedell "bears the burden of advancing a cogent argument on why the absent party is needed to prevent inconsistent or inadequate judgment." *Grassy Brook Village, Inc. v. Richard D. Blazej, Inc.*, 140 Vt. 477, 482 (1981).

In this case, the issue is whether Katherine Richmond has a right to use the spring on Bedell's property and draw that water across the Bedell property. This question does not implicate Todd's property or her interest in the waterline, except tangentially. This is because Todd's property comes from a different line of deeds that go back to Elizabeth Hubbard's subdivision where she reserved her interest in the waterline across the Todd parcel.[2] While many of the assertions that Richmond has made in this matter are also applicable to the Todd parcel, these differences exist and suggest that any analysis of rights and responsibilities between the Bedell and Todd parcels are distinct. See 7 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1604 (1972) (noting that Rule 19(a) is only applicable when there is a create a reasonable potential for inadequate or conflicting judgments).

While it is not disputed that the real value of the spring to Richmond includes the ability to draw the water all the way to her property, the legal issues in this case are separate and distinct. In addition to the different sets of deeds, the interests are fundamentally distinguishable. The easement on the Todd

---

[2] Even to the extent that Plaintiff would frame the issue as the right to draw water from the spring across the property, Bedell's rights are different from Todd's. The right to draw water from a spring across the servient estate is an inherent part of a spring right. *Haldiman v. Overton*, 95 Vt. 478, 481 (1922) ("The spring was in existence, and the exception not only secured to Sykes the right to take water therefrom, but to do whatever was reasonably necessary to make that right available for the purpose for which it was intended."). The right to draw that water line across another's property is a function of either contract or easement or prescriptive right. *Clement v. Rutland Country Club*, 94 Vt. 63, 69–70 (1920).

parcel represents a more limited intrusion with only a buried waterline, rather than a spring and spring box. Moreover, any factual pleading is likely to vary as the Todd parcel was subdivided from the farmhouse parcel much later than the subdivision with the Bedell parcel. These differences mean that any litigation or decisions that are potential inconsistent will likely arise from the different facts that would be relevant to each parcel. See *Thomas v. Olds*, 150 Vt. 634, 636 (1988) (finding neighboring landowners were not necessary parties to a boundary dispute concerning a shared boundary, despite the relevance of other shared boundaries). But even if different judgment were rendered, they would not be conflicting. If Richmond is deemed to have an easement across one parcel but not the other, it would affect the usefulness and accessibility of either easement, but it would not conflict. Vermont law is replete with examples of this type of limitation, which does not affect the spring right but may very well limit its use and function. *Clement*, 94 Vt. at 69–70. While Plaintiff Bedell is not incorrect in noting that joining Laura Todd would likely render more full and complete relief, there is nothing under rule 19 that compels her joinder or renders judgment impossible in her absence. See *Pillsbury v. Town of Wheelock*, 130 Vt. 242, 245 (1972) (holding that the failure to join an interested party did not render a judgment against another party unjust or invalid, and it is for the missing party to raise its own claims).

For these reasons, the Court concludes there is no basis to limit or postpone the judgment in this matter for lack of Laura Todd as an interested party under V.R.C.P. 19.

### B. *Prescriptive Easement*

The evidence shows that the Richmond farmhouse and land has had a consistent water source from a spring and spring box located on the Bedell property since at least the early 1940s and possibly longer based on the age, condition, and materials used in the spring box and waterlines. The water source has provided water for the Richmond property for both human occupants as well as livestock, plants, and animals during this history, without significant interruption. Since 1994, the spring box and the farmhouse have been held by separate owners, and the history of the Richmond parcel demonstrates that Richmond and her predecessors in title performed regular and continual maintenance on the spring box, the water supply, and the waterlines. At the same time, Bedell and his predecessors in title have been aware of the spring box, its use, and the fact that its lines serve to deliver water from the spring to the Richmond farmhouse.

The evidence in this case demonstrates that Defendant Richmond has satisfied the elements of a prescriptive easement right to the spring on Bedell's property. The use of the spring has been open, notorious, hostile, and continuous for 15 years or more. *Community Feed Store, Inc. v. Northeastern Culvert Corp.*, 151 Vt 152, 155–60 (1989). The spring box and its use were established by prior owners when the

property was a single parcel. After the parcel's subdivision in 1994, the use continued, and the evidence shows that Bedell and his predecessors in title all had notice of both the spring box and its use. Richmond and her predecessors in title have maintained the spring box on a regular basis and performed the necessary maintenance to keep up the spring box. There is no evidence that would support a conclusion that this use was by permission or that any of Bedell's predecessors had granted Richmond's predecessors a license to use the spring. Instead, the evidence shows a consistent treatment of the spring rights as property of whomever occupied the farmhouse. Each successive owner in Bedell's line of title has allowed the use to continue without challenge, and each successive owner in Richmond's line of title has taken this right without asking permission or seeking a grant from the servient estate. In this evidence, the Court finds nothing to disturb the presumption that the open and notorious use was adverse. Id. at 159.

As Richmond notes, a party claiming a prescriptive easement can look to their predecessor's use to fulfill the 15-year requirement. Id. at 160. In this case, the 15-year requirement is more than satisfied as the adverse use began no later than 1994 with the division of the property and Elizabeth Hubbard's occupation and use of the property.

For these reasons, the Court concludes that Defendant Katherine Richmond has established a prescriptive easement to the spring located on Scott Bedell's land that has been used as a water source for the Richmond farmhouse for 100 years and at least 30 years of adverse possession.

C. _Scope of the Easement_

The central issue in this case is the scope of the easement. Plaintiff raises several objections to what Richmond may do with the easement and the spring box. For the most part, these objections are efforts to spike the proverbial well by boxing Richmond into a particular and limited use.[3]

Richmond is entitled to the continued, reasonable, and convenient use of the spring, without the burdensome interference. _Rowe v. Lavanaway_, 2006 VT 47, ¶ 23 (The easement owner "is entitled to use of

---

[3] A substantial part of Bedell's case sought to extoll the virtues of an on-site well over a neighboring spring. While the testimony of Jenn Gould was credible on this point, this evidence misses the central point, which is that Richmond does not have a well. She has a spring, and while a well might be superior, a spring remains an acceptable and permissible water source. So long as she has these spring rights, and the State of Vermont allows householders to use springs as a water source, then Richmond is permitted to use this "inferior water supply." This holds true even if the cost of the spring over time exceeds the cost of installing a well.

It is also worth noting that the science behind water protection has evolved, and surface water sources that were once off-limits to protect their integrity have been opened to public use as water supply rules have loosened with improvements in the purification processes. See, e.g., _City of Montpelier v. Barnett_, 2012 VT 32, ¶¶ 23–39 (charting the history of regulations over Berlin Pond in its capacity as a body of water and the City of Montpelier's drinking source).

an easement 'in a manner that is reasonably necessary for the convenient enjoyment of the servitude.'") (quoting RESTATEMENT (THIRD) OF PROPERTY, SERVITUDES § 4.10 (2000)). As noted above, a spring right necessarily includes the right to draw water across the servient estate in a reasonable manner. In this case, Richmond has drawn the water through an underground pipe. Whether that is a shallow buried pipe or one that is laid beneath the frost line does not increase the extent of the easement or unreasonably burden the servient estate.

The spring right is limited. As Vermont law notes, the right to a spring is limited to a specific spring and only to the extent that such water flows naturally to the surface. *Magoon v. Harris*, 46 Vt. 264, 271 (1873). As the Court in *Magoon* notes, a spring right:

> [G]rants the privilege of taking water from springs; and does not grant any right to any other water. A spring of water is a place where water by natural forces usually issues from the ground. The places where the defendant reached water by orifices in the ground, and where the water did not flow to the surface, are wells, and not springs. The grant, therefore, was of a privilege of taking water from the places in the ravine where the grantees did take it from without controversy, and not from these places where the defendant dug.

*Magoon*, 46 Vt. at 271. Similarly, the common law limits the rights gained either through deed or prescriptive rights to a spring or spring box to any water flowing through the landowners property and does not require the landowner to maintain any particular qualities of percolation. *Wheelock v. Jacobs*, 70 Vt. 62 (1897). As *Wheelock* holds, spring rights do not include the right to water before it reaches the spring. A landowner is permitted to dig wells and develop other springs and is not liable to the impacts that these developments may have on the water flow to the original spring, except that the landowner will be liable if the sole purpose is to cut off the source of the spring and injure the other party. Id.

Bedell in his proposed findings seeks other limitations including a prohibition against improvements to the spring box; requiring Richmond to get permission from Bedell before she enters his property to perform maintenance and repairs; limiting Richmond to the existing three-quarter-inch width pipe; requiring Richmond to hire professionals for any and all work on the water system; and limiting how Richmond uses the spring water flowing to her property through this easement. None of these restrictions are consistent with Richmond's legal rights under Vermont law.

In *Arbuckle*, the Vermont Supreme Court states:

> The general rule of law by which the right to draw water from a fountain or spring upon the land of another, and through the land of the owner of such spring, and to dig in the soil for the purpose of repairing or relaying the aqueduct, may be acquired by fifteen years' uninterrupted use, under claim of right, is familiar law in this state. And that this use will fix

and define the mode and conditions of such right we have no doubt. As if the party has been accustomed to repair the aqueduct and to allow the owner of the land to take water from the same.

*Arbuckle v. Ward*, 29 Vt. 43, 52 (1856). As with *Magoon*, the right to use a spring is broader than curating the existing system. The use is to supply water from the spring to a house in the most efficient and effective manner. While this spring started out with a set-stone spring box and lead-lined cedar logs to pipe the water, it now has a concrete spring box and more modern piping. If Richmond seeks to update and upgrade these materials, she is free to do it and perform the work necessary to install these improvements so long as she takes efforts to restore the condition of the surface and surrounding lands after the work is completed.

While Bedell characterizes his provisions as necessary conditions to keep the easement "reasonable," neither the facts, nor the history of this case support such conditions as a matter of law. The right to take water from the spring of another is a property right. *Griswold v. Town School District of Town of Weathersfield*, 117 Vt. 224, 225–26 (1952). As such, it is a right held by Richmond and it may not be interfered with or controlled by Bedell. Id. Like any private property right, it is the holder's to use. *Fire District No. 1 v. Graniteville Spring Water Co.*, 103 Vt. 89, 91 (1930) ("The law of percolating waters is well established in this state. . . . [It] belongs to the owner of the land, [and he] may use it on his own territory, or he may sell it to be used by others elsewhere").

That said, *Arbuckle* does go onto to state that the adverse use defines the amount of water which the party has the right to take. Arbuckle, 29 Vt. at 52. The history of this spring is that Richmond's predecessors freely used the spring to provide water to the farmhouse and surrounding property, for humans, animals, and livestock. It does not involve pumping the water to multiple houses or bottling the water and or selling it to others. Based on this history, the Court concludes that the scope of Richmond's easement is limited to use for her house and any livestock or animals she may keep. There is no right to sell water from the spring to others, and there is no right to divert the spring lines to other houses or properties. Id.

These rights define the scope of Richmond's spring water easement. Put succinctly, they include the rights:

1) To update and upgrade the existing spring box and water lines;

2) To bury the water lines to a sufficient depth to protect them and to avoid freezing or contamination;

3) To come onto the Bedell property and perform maintenance, repairs, and improvements;[4]

4) To expand the water line as needed to deliver water to the household;

5) To contract for or perform work on the spring box and waterlines in a manner that Richmond deems appropriate;[5] and

6) To receive and use water from the spring for her household and any animals or livestock that she may keep on the property.[6]

The primary limitations on Richmond's easement are:

A) She may not sell the spring water to third parties.

B) She may not divert or expand the spring system to serve other households or any subdivisions since the spring has only been used to for the one household and its surrounding and related uses.

C) She may not dig a well, pump water, or augment the natural flow, except to dig out a spring box to hold and retain the percolating water.

D) She may not install a road or other surface improvements on Bedell's property apart from the spring box and any necessary features to have the lines from the box carry water to her property.

E) She must make reasonable repairs any surface disturbances created by her maintenance, repaid, and improvement work. and

F) She has no right to dictate how Bedell uses his property or develops other springs and wells on the property so long as such uses are not intended to solely and maliciously cut off her spring rights.

---

[4] While Richmond does not need specific permission to come onto Bedell's property, it is the Court's observation that this does not preclude the parties from cooperating and coordinating this process, particularly for more extensive work, the parties would be well-served to work with each other to develop best practices and methods for how this work can be done.

[5] Again, while the Court will not proscribe specific work terms, nothing in this decision exempts Richmond from any zoning or public health requirements that the state or municipality may impose or require. By way of example, Bedell points to a letter from the Burke zoning administrator directing Richmond not to perform certain improvements by herself. While the authority of that official to issue such a directive is not before the Court, to the extent that he has such authority, it is not diminished or affected by the present decision.

[6] While it was not specifically discussed, the Court understands that this would also include the use of spring water for plants and gardens on the property.

D. *Site Visit*

Plaintiff Bedell has requested that the Court perform a site visit to the property to further understand his concerns about the special and delicate nature of the surrounding landscape. Conducting a site visit is discretionary function of the Court that may be employed when the parties or the Court decide that viewing the stie will assist with its findings of fact. *Alberino v. Balch*, 2008 VT 130, ¶ 8. In this case, the Court took a full day of testimony from several able witnesses who were intimately familiar with the land and the spring, Plaintiff being chief among these witnesses. The Court, after reviewing the documents, exhibits, and testimony is confident that it has sufficient information to make its findings. As such, the Court will decline Plaintiff Bedell's invitation and bring the matter to a timely point of closure.

**ORDER**

Based on the evidence and testimony, the Court **Grants** Judgment to Defendant Katherine Richmond against Plaintiff Scott Bedell as follows. Defendant has established that she has a prescriptive easement to the spring located on Plaintiff's property where a spring box is currently located, and this easement includes the right to maintain, repair, and improve the spring box and water lines running from the spring box to the edge of Plaintiff's property. Defendant's easement is not personal, but it runs with the land at 275 Locust Ridge Road in Kirby, Vermont. This easement is limited to drawing water from the spring at its natural rate of flow and only for the purpose of providing water to the household and any animals, livestock, plants, and crops that the owners and occupants of the house may require. The rights of the parties are further enumerated above.

Plaintiff's request for a site visit is **Denied.**

This decision constitutes a final judgment of the Court. Final Judgment is entered for Defendant.

Electronically signed on 8/31/2024 10:57 AM pursuant to V.R.E.F. 9(d)

_____

Daniel Richardson
Superior Court Judge