I. P. MAGOON, JAMES A. HARLOW, AND NEWELL L. HARLOW
v. JAMES HARRIS.

[IN CHANCERY.]

*Parol Evidence of Attendant Circumstances to explain Grant. Construction of Grant to take Water from Springs.*

Parol evidence is admissible to ascertain all the circumstances of situation and condition of the subject of a grant at the time the grant was made, in order that what there was to be granted may be seen; then the grant may be read in the light of those circumstances, to ascertain exactly what, by its terms, was granted.

A spring is a place where water usually issues from the ground by natural forces. Hence, a grant of the privilege of taking water from *springs* in a certain locality, conveys no right to take it where it does not thus issue from the ground.

APPEAL from the court of chancery, Caledonia county. The bill alleged, that on the 1st day of October, 1864, the orator Magoon, and one Flint, purchased of the defendant a certain piece of land (describing it), situate upon the north side of Portland street, in St. Johnsbury, and that the defendant's deed of said land contained the following grant: " Also, I hereby grant the said Flint and Ma-

goon the privilege of taking water from springs on the west side of my farm, sufficient to supply the buildings to be erected on said land, with the privilege and right of entering upon my farm and digging and trenching for the purpose of conveying said springs across my farm to said premises, and to repair said aqueduct when necessary. Said Flint and Magoon shall seed and smooth over said land whenever they shall dig it up, and leave the same in a good farmer-like manner—reserving to myself all the water in said springs not necessary for said buildings on said described premises;" that said land was purchased as aforesaid for the purpose of erecting thereon buildings in which to run and use different kinds of machinery for the manufacture of pegs, and for dressing different kinds of lumber, which said machinery was to be propelled by steam, and the engine to be supplied with water from the springs mentioned in said grant, all which the defendant well knew at and before the time of the execution of said deed; that it was agreed between the said Flint and Magoon and the defendant at the time of the execution of said deed, that the former should have the right to procure and convey from the west side of the defendant's farm, as much water as should be necessary to carry on the business contemplated by them as aforesaid; that soon after said purchase, the said Flint and Magoon erected a machine shop on said land, and put into the same a large amount of machinery, such as they needed to carry on said business, and also put in a steam-engine as a motive power; that they laid an aqueduct from said shop to one or two springs of water on the west side of the defendant's farm, for the purpose of conveying water from said springs to said shop; that on the 18th of June, 1868, the orators James A. and Newell L. Harlow, became the owners of one undivided half of said land, shop, and machinery, and that the said Flint had since had no interest therein; that at certain seasons of the year, the springs to which said aqueduct was laid, did not furnish a sufficient quantity of water to supply said engine, and that it was necessary to increase the supply of water therefor; that a great quantity of water could not be obtained, without extending said aqueduct to some other point on the west side of said farm where water could be obtained; that at different

times the orators had attempted to so extend said aqueduct, but were prevented by the defendant from so doing; that the orators had frequently dug trenches for the purpose of extending said aqueduct as aforesaid, but that the defendant had filled them up in the night-time, and had forbidden the orators to make any efforts to obtain water where a sufficient supply could be found as aforesaid; that in consequence of said acts of the defendant, the orators had been at times prevented from carrying on their accustomed business aforesaid, and at other times had been compelled to draw water a great distance in barrels, to supply said engine; that the orators had frequently requested the defendant to allow them to take such means as were necessary to obtain sufficient water for their purpose aforesaid, but that the defendant had always refused such requests. The bill charged that the defendant had no right to interfere with the orators in the behalf aforesaid, or in any way to prevent them from obtaining from the west side of said farm sufficient water for their purpose aforesaid, and prayed that he be restrained by injunction from so doing, and for general relief.

The answer admitted the conveyance of said land to the said Flint and Magoon, and the grant of water by deed, as alleged in the bill, but denied that the defendant ever conferred upon the said Flint and Magoon, or any of the orators, any right to take water from the west side of his farm, except by said deed; alleged, that at the time of the execution of said deed, it was considered that the engine to be used by the said Flint and Magoon, would require a small but constant supply of water; that upon the opposite side of said street the defendant then and still owned other lands, upon the hill-side of which were two springs of water, so situated as to afford sufficient head to convey water by means of an aqueduct, across said street, to the land thus conveyed, and that by trenching or ditching, said springs could be easily united, and water conveyed therefrom to said shop; that there were then no indications of other springs of living water in the vicinity of said springs, and that none had since been discovered at the surface of the ground anywhere on the west side of said farm; that said springs were never known to fail to supply a constant flow of water, which the said Flint and Magoon well knew, and they and

the defendant then believed that said springs would furnish more than sufficient water for the use of the shop which the said Flint and Magoon contemplated building ; that said grant of water was made by the defendant in part consideration that the said Flint and Magoon should unite said springs, and so improve about the same by trenching and digging as to convey the water to an aqueduct to be constructed by them, from which it was contemplated that they should draw sufficient water for their purpose aforesaid, and that the defendant might draw the rest for the use of his lands on both sides of said street. The answer denied the right of the orators to take water from the west side of the defendant's farm, except from said springs, and denied that he had ever interfered with their right to take water from said springs ; alleged that after the execution of said deed, the defendant erected a dwelling-house on the south side of said street, and sold building lots on both sides thereof, upon which dwelling-houses had been erected, which were occupied ; that for the purpose of supplying some of said houses with water, the defendant sunk two wells several rods north-west of said springs ; that between said springs and said wells, a ridge of land intervened, which prevented any connection between them ; that by sinking said wells about twelve feet below the surface, water was obtained, which was conveyed by aqueducts to supply some of said houses ; that on or about the first of August, 1868, the orators entered upon the northerly end of the defendant's farm, and dug trenches, and cut a ditch from the northerly part of the orators' aqueduct, south-west, so as to avoid said ridge of land, and extended the same to the bottom of the defendant's wells in such a manner as to take away therefrom the defendant's water, and to cut off the supply to said dwelling-houses, which ditch, to avoid irreparable injury, the defendant stopped up near said wells ; that on the 26th of July, 1870, the orators again attempted to injure and destroy the defendant's wells by connecting an aqueduct with the bottom thereof in such a manner as to convert the water thereof to their own use, which the defendant prevented by cutting off said aqueduct ; and that if said springs failed to supply sufficient water for the orators' use, it

was because of the orators' negligence in not properly saving the waters thereof.

The answer was traversed, and testimony taken. It appeared that said springs were near each other in a small ravine, and that for some twenty rods northerly thereof, towards the orators' shop, the ravine was wet and swampy, and that the defendant's cattle had been accustomed to drink there. There was considerable testimony as to the condition of said springs and ravine at the time the defendant deeded to the said Flint and Magoon ; and it appeared that said springs were not then very well defined, but that water then flowed to the surface at the springs, and at several other places in said ravine, and that said Flint and Magoon examined said springs and ravine before purchasing ; and the testimony tended to show that water did not then, or ever, naturally flow to the surface of the ground at any other place on the west side of the defendant's farm. A further statement of the testimony, is unnecessary. The court dismissed the bill, *pro forma*, with costs. Appeal by the orators.

*O. S. & C. C. Burke* and *B. N. Davis*, for the orators.

The orators claim that the language of the grant should be so construed as to give them the right to utilize enough of the water on the west side of the defendant's farm to furnish a supply for the buildings erected, or to be erected, by the orators, and more especially to supply their engine in the shop. The grant is the privilege of taking *water* from *springs* on the west side of the defendant's farm, sufficient to supply buildings to be erected thereon, with the right of entering upon the defendant's farm, and digging and trenching for the purpose of conveying said springs across defendant's farm to said premises. Hence it will be seen that the language of the grant does not import a grant of a *spring* nor *springs*, but it is in terms a grant of the right of taking *water*. The whole object of the grant was, to give the orators the right to take water from the *west side* of the defendant's farm, to the extent specified. The first inquiry is, what was the intention of the parties. *Rood* v. *Johnson*, 26 Vt. 64 ; *Gray* v. *Clark et al.* 11 Vt. 583. This intention is to be discovered—first, by the grant

itself; secondly, by the surroundings and circumstances of the parties, and the thing to be enjoyed by the grant. If the grant confines the orators to *springs of water*, in the contemplation of that term as usually understood, the grant is void, for there are no such springs on the west side of the defendant's farm. But it is not necessary to the validity of a grant, that every part of the description should be literally true. *Day* v. *Adams*, 42 Vt. 510.

In determining what construction is to be given to the grant, or rather what the term " from springs " means, we should take into view what was the appearance of that whole side-hill surface. Were there any well-defined springs to be seen, or was it the supposition of the parties that by digging and trenching, water could be obtained. The parties acted on this supposition, and the contemporaneous acts of the parties in executing the contract, may be taken into consideration in determining the intention of the parties. *Gray* v. *Clark et al. supra*. Whoever grants a thing is supposed also, tacitly, to grant that without which the grant itself would be of no effect. *Coolidge* v. *Hager*, 43 Vt. 9. Courts will construe grants of water *liberally*; so as to impose no unnecessary restriction upon the manner of its use ; and when the words used will admit of one construction which would limit the use to a particular purpose, and another which would allow the use specified to be merely a measure of quantity to be used, the latter construction is adopted. *Rogers et al.* v. *Bancroft et al.* 20 Vt. 250 ; *Adams et al.* v. *Warner et al.* 23 Vt. 395 ; *Chatfield* v. *Wilson*, 28 Vt. 49 ; *Koath* v. *Driscol*, 20 Conn. ; *Adams* v. *Frothingham*, 3 Mass. 352. The language is the defendant's. Had he intended to confine the orators to any number of springs, he could easily have said so. *Barnes* v. *Burt*, 38 Conn. 541. The construction of a deed that is doubtful, must be taken most strongly against the grantor, for he is *presumed* to intend to convey, if in possession, whatever is necessary to the reasonable enjoyment of the thing conveyed. *Bushnell* v. *Proprietors of Ore Bed*, 31 Conn. 157.

*A. M. Dickey* and *L. P. Poland*, for the defendant.

The orators do not claim in their bill that there is any mistake in their deed, and do not ask to have it reformed. The first ques-

tion then is as to the construction to be given to the word *springs*, made use of in orators' deed. This word when applied to water, means a fountain of water that naturally gushes out of the earth at its surface.    2 Bouv. Law Dict.

It is too well settled to admit of doubt, that parol testimony can never be resorted to to explain a written instrument, unless there is some latent ambiguity or fraud.    We submit there is no such ambiguity in the language of this deed.    All the testimony, therefore, offered with reference to the conversation of the parties at the time of the contract or the execution of the orators' deed, and all the other testimony taken in this case, except what refers to the number and location of the springs on the west side of the defendant's farm, and whether defendant interfered with the springs mentioned in said deed, is inadmissible.    *Barney* v. *Bliss*, 2 Aik. 60 ; *Bradley* v. *Bentley*, 8 Vt. 243 ; *Bradley* v. *Anderson*, 5 Vt. 152 ; *Hodges* v. *Strong*, 10 Vt. 247.

By the terms of the deed, the defendant only grants the privilege of taking water from *springs* on the west side of his farm. There is no grant to take water anywhere else on his land, but from *springs*.    If there were no *springs*, then no water was conveyed.    The fact is, therefore, important, whether there were springs, how many, and where located, on the west side of said farm, and whether the defendant interfered with the orators' use of them.    If the defendant had intended to convey to the orators the right to all the water that could be found on the west side of his farm, he could easily so have expressed it in the deed.    On the contrary, he confined them to the *springs*.    In *Mills* v. *Catlin*, 22 Vt. 98, the court say a deed should be construed according to the intention of the parties, manifested by the entire deed. Can there be any doubt that the defendant intended to limit, and the orators to be limited, to the water from the two *springs ?*

From the facts set forth in the orators' bill, we submit they are not entitled to relief in chancery.    The orators do not claim any mistake in the deeds, or any frauds ; therefore the deed must stand upon its legal construction.

The land owner has the right to use subterranean water on his own land for the benefit of his land, even though in its enjoyment

by digging down on his own land, he cuts off a spring on his neighbor's land, especially percolating water. Washb. Easm. 365, 378; 1 Hillard Torts, 590; *Chatfield* v. *Wilson*, 28 Vt. 49; s. c. 31 Vt. 358; *Howard* v. *Benton et al.* 32 Vt. 724.

The opinion of the court was delivered by

WHEELER, J.    The rights of these parties involved in this case, are to be determined upon the effect of the deed of the defendant to Magoon and Flint.    There is no question but that parol evidence is admissible, and proper to be considered, to ascertain all the circumstances of situation and condition of the subject of the grant at the time the grant was made, in order that what there was that could be granted may be seen, and then the grant be read to find exactly what, by its terms, was granted.    The evidence shows that living water came by natural flow to the surface of the ground at various places in the ravine where the defendant had been accustomed to water his cattle, on the west side of his farm, and does not show that water so came to the surface at any place within the territory mentioned outside of that ravine.    There may have been such places at points within that territory that there is no controversy about in this case ; and if there are, no finding or decision with reference to them, is now made.    At the places where the defendant dug and found living water, the water did not flow to the surface of the ground, but percolated or flowed in hidden channels through the ground.    The controversy is as to what rights to water at these several places the deed conveyed.    It grants *the privilege of taking water from springs ;* and does not grant any right to any other water.    A spring of water is a place where water by natural forces usually issues from the ground. The places where the defendant reached water by orifices in the ground, and where the water did not flow to the surface, are wells, and not springs.    The grant, therefore, was of a privilege of taking water from the places in the ravine where the grantees did take it from without controversy, and not from these places where the defendant dug.    The evidence does not satisfactorily show that the digging of these wells by the defendant, interfered with the water of the springs in the ravine in any degree ; and it is not

necessary to determine whether, if it did so interfere, the orators would have a right to stop the interference, and to a remedy to prevent the defendant from continuing it. As the facts now appear, the defendant has the right to take water from the wells the evidence shows him to have dug, and the orators have shown no right to have him restrained, nor any other ground for relief to them.

The decree of the court of chancery is affirmed.