HENRY W. CLEMENT *v.* RUTLAND COUNTRY CLUB.

January Term, 1919.

Present:  WATSON, C. J., HASELTON, POWERS, TAYLOR, and MILES, JJ.

Opinion filed January 10, 1920.

*Waters and Water Courses—Nature of Grant of Right to Take Water from Stream or Spring—Right in Gross—Right Appurtenant—Nonuser—Adverse Use—Assumption in Support of Decree—Rights in Spring Subsequently ' Dug—Rights of Joint Owners in Water System—Consideration of Questions Limited by Decree.*

1.  The grant of a right to take water from a stream or spring conveys an interest in the land partaking of the nature of a *profit à prendre.*  It may be granted as a right in gross or as a right appurtenant, and in either case it is assignable, descendible, and devisable.

2.  The granted rights in question, to take a certain amount of water from a particular source, not being inseparably annexed to particular lands, were rights in gross, and could be sold and conveyed apart from the land.

3.  The mere conveyance of his lands by a landowner passes no title to his right in gross to take water from a particular source.

4.  The granted right to take water from a particular source cannot be lost by nonuser in the absence of any intent to abandon; and that intent will not be inferred from nonuser alone.

5. Where the right to take water from a spring was the result either of an exchange or a gift, the title thereto was perfected by the continuous, open, and adverse use of the spring for more than fifteen years.

6. In such case, it will be assumed, in support of the decree below, that the use was adverse.

7. Where parties were granted the right to take water from a certain brook and later, by exchange or gift, a spring was substituted for the brook as a source of supply, the rights of the parties in the waters of the spring were subject to the various provisions of the original grant.

8. There is no spring until water issues from the earth; and where one of several joint owners of a spring and aqueduct therefrom dug a spring and piped it into the aqueduct for the sole purpose of increasing his own supply of water, the co-owners did not thereby acquire any rights in that spring.

9. One of several joint owners of an aqueduct cannot put it to a different use than that for which it was established unless all agree.

10. Where the decree below only covered the question of the titles of the parties to the lands and rights involved, this Court will consider no other questions.

APPEAL IN CHANCERY. Bill to establish the respective rights of the parties in a water system supplying both. Heard on bill, answer, defendant's cross bill, plaintiff's replication thereto, and Chancellor's findings of fact at the September Term, 1917, Rutland County, *Fish,* Chancellor. Decree for the plaintiff. The defendant appealed. The opinion states the case.

*Marvelle C. Webber* for the defendant.

A prescriptive right cannot arise from a license. *Hanson* v. *McCue,* 42 Cal. 303, 10 Am. Rep. 299; *Taylor* v. *Gerrish,* 59 N. H. 569.

An easement enjoyed by the dominant estate cannot be severed and granted by itself to a third party. *Peck* v. *Conway,* 119 Mass. 546; *Winslow* v. *King,* 14 Gray 321.

*Walter S. Fenton* for the plaintiff.

POWERS, J.   This is a suit in chancery brought to establish the respective rights of the parties in a water system which supplies both.   They trace their titles to a common owner, the late Redfield Proctor.   In 1867, Senator Proctor owned a farm lying on both sides of the highway now known as Grove Street, in the city of Rutland.   The dwelling house then occupied by him and his family and now owned and occupied by the plaintiff is on one side of this street, and the farm house, now owned and occupied by the defendant as a club house, is on the other.   The defendant's golf links are also on that side of Grove Street, and in connection therewith, as we understand the findings, the defendant now owns all of the Proctor farm lying on that side— the west side—of the street.   In the western part of this farm there is a pasture known as Pine Hill, on which is a natural pond, known as Pine Hill Pond.   From this a small stream flows easterly and falls into East Creek, which runs southerly through the farm.   At some time prior to August 30, 1867, Senator Proctor and his neighbors, Cain, Verder, and the Lawtons, decided to build a water system.   Each of the four—the Lawtons counting all the time as one—was to own one undivided fourth of it.   The water was to be taken from the outlet brook of Pine Hill Pond in a two-inch pipe to a point near the Lawton house, and from that point an inch pipe was to be laid to the house of each owner.   The necessary rights of way were to be granted, and the owners were to share in fourths the expense of constructing the aqueduct to a point within five rods of each house, from which point each owner was to complete it to his buildings at his own expense.   On the date named, Senator Proctor and his wife, Emily, hereinafter spoken of as the Proctors, deeded to each of the parties named, Cain, Verder, and the Lawtons, their heirs and assigns, an undivided fourth part in the right to take a two-inch pipeful of water from the outlet brook of Pine Hill Pond.   This deed contained provisions for carrying into effect the arrangements for the construction of the water system as specified above.   Thereupon the parties built a dam across the brook at a point below the outlet of spring No. 3, hereinafter referred to, and laid a two-inch pipe from the intake pond created thereby to a point in the rear of the Lawton house.   From this point, the aqueduct was continued to the four houses by inch pipes.   Through these pipes the parties were supplied with water at their respective buildings.

On May 7, 1872, the Proctors conveyed some of their land on the west side of the street and included in the deed a grant of one undivided half of the Proctor interest in the water system. This interest is covered by a deed now held by the defendant.

On March 26, 1909, the plaintiff acquired title to the Proctor dwelling house by a deed from Senator Proctor's widow. This deed purported to include what water rights and interest in the aqueduct were reserved in the Proctor deed of August 30, 1867. The plaintiff also holds deeds from or tracing to the original owners covering the interests conveyed by the Proctors to Cain and Verder, as above stated. But the defendant denies that the plaintiff has even paper title to the Lawton interest. This question and the question of the validity of the paper titles depend upon the legal character of the interest conveyed by the original Proctor deed and the legal effect of the subsequent change in the source of water supply. It is to be observed that this water system really consists of two elements: An aqueduct; and certain water rights. And it might easily happen that the rights of these parties in one might differ from their rights in the other.

[1, 2, 3] The defendant claims that the rights conveyed by the Proctors by the original deed were mere easements, and not an interest in the real estate itself. That this would be the result in some jurisdictions may be admitted; but it is not so in Vermont. Our rule is that the grant of a right to take water from a stream or spring conveys a right in the land itself. This right is something more than an easement; it is an interest partaking of the nature of a *profit à prendre*. It may be granted as a right in gross, or as a right appurtenant. In either case, it is assignable, descendible and devisable. This is all made plain and put beyond question by *Lawrie* v. *Silsby*, 76 Vt. 240, 56 Atl. 1106, 104 A. S. R. 927. The rights granted by the Proctor deed were not inseparably annexed to particular lands, were not rights appurtenant, as claimed by the defendant, but were rights in gross, and could be sold and conveyed apart from the land to any one who chose to buy. That they were in gross appears from the Proctor deed. Not only were they not in terms made appurtenant to particular lands, but it unmistakably appears that it was intended and expected that the parties to this deed were to, or might, supply water to other persons. The grantors covenanted that they would not sell to others the right to take water from the brook, or take it themselves, "to supply

any persons that [whom] the parties acting under this deed will supply'' except by agreement of all parties interested. This shows that from the beginning it was contemplated that water might be sold by the owners of the system. The action of the parties has been in accord with this. The Proctors divided their right and sold half of it to Baxter. The only interest in the original system which the defendant owns or pretends to own depends upon the validity of this conveyance. The Cain right was divided and treated in the same way. All the conveyances, except as hereinafter stated, made specific grants of the water system. The plaintiff's claim of title to the Lawton interest is based upon a quitclaim deed from H. H. Farmer and others. This deed makes a specific grant of one-fourth of the water system. But the grantors had no title to this interest. They derived title from Benjamin F. Farmer, and he from Charles H. Landon. How any title passed from the Lawtons to Landon is not shown. But the deeds to and from Benjamin F. Farmer made no mention of the water system, and the only way they could carry any title to it would be as an appurtenance of the lands conveyed. But the rights in the system being in gross, and not appurtenant, they could not be so conveyed. So it must be held that the plaintiff shows no title to the Lawton fourth.

In 1876, or about that time, the waters of the intake pond became polluted, and the intake pipe was changed from the brook to one or more springs near by. This was done by agreement of all concerned, and, though the fact is not reported, it is a fair inference that all shared in the expense. The finding as to the new source of supply is not as definite as could be desired. The chancellor says that the pipe was changed from the brook to a certain ''spring or springs.'' Sometimes he speaks of the ''south spring,'' and sometimes of the ''south springs.'' But we think it must be taken that the only spring covered by the agreement of change and the only one taken into the system at that time was the spring called spring No. 1, and so shown on the plaintiff's plan. We base our conclusion on these facts: In finding 43, it is expressly stated that spring No. 1 was the only source of supply from the south system after the use of the brook was discontinued; only three springs in that system are shown on the plan, or spoken of in the report; and the findings show that the defendant dug No. 2 in 1902 or 1903, and that the

plaintiff piped in No. 3 after he bought his house in 1909. These springs, Nos. 2 and 3, are on the defendant's land.

[4, 5, 6]   The defendant says that when the intake was changed, the owners abandoned their rights or a part of them. This· claim can, of course, only apply to the rights in the brook; it cannot, in any view, be claimed that they abandoned any of their rights in the aqueduct, for they did not discontinue its use even.   But we do not think their rights in the brook were abandoned.   These were granted rights, and the books say that real property, corporeal or incorporeal, held by grant cannot be lost by mere nonuser.   There must exist an intent to abandon, and this intent will not be inferred from nonuser alone. *Sowles* v. *Minott*, 82· Vt. 344, 73 Atl. 1025, 137 A. S. R. 1010.   The arrangement, if it affected the rights in the brook, amounted to an exchange, or was a parole gift of a two-inch pipeful· of its waters.   It resulted in something more than a mere license to use the spring.   It substituted the spring for the brook as a source of supply.   It makes no difference with the result whether we regard the transaction as an exchange or a gift; in either case, the use of the water thereunder for more than fifteen years has perfected title to the interest involved. *Blaine* v. *Ray*, 61 Vt. 566, 18 Atl. 189.   To be sure, the chancellor has not, in terms, reported the facts characterizing this use, but, in view of what is shown, they inferentially appear.   The spring has been used for the requisite time, for it was continued from 1876, or about that time, to 1892, or about that time; and, though these dates are not exactly given, it is obvious that the use covered more than fifteen years.   The use was, in a legal sense, continuous, for though the pipe was sometimes washed out where it crossed the creek, it was repaired, and nothing in the nature of a legal interruption of the use resulted.   The use was open and notorious, for everybody concerned knew all about it.   The use was adverse; at least in support of the decree it will be so taken. *Perrin* v. *Garfield*, 37 Vt. 304; *Barber* v. *Bailey*, 86 Vt. 219, 84 Atl. 608, 44 L. R. A. (N. S.) 98.

[7]   The rights acquired under this arrangement were subject to the various provisions of the original grant, and the rights of the parties in the waters of the brook are the measure of their rights in the waters of the spring.   So far, then, as the aqueduct and spring No. 1 are concerned, the only error we find in the decree lies in the fact that it gave the plaintiff the Lawton

one-fourth interest. His title is five-eighths instead of seven-eighths.

It remains to consider the rights of the parties in the other springs of the south system—Nos. 2 and 3.

[8, 9]   The grantees in the Proctor deed acquired no rights in these springs by the agreement under which the waters of spring No. 1 were taken. Spring No. 2 was a new spring, and did not exist when the Proctor deed was given. It did not come into existence until it was dug by the defendant as hereinafter stated. There is no spring until water issues from the earth. *Magoon* v. *Harlow,* 46 Vt. 264. At the time the defendant acquired its property in 1902, the aqueduct was badly out of repair, and had been so for some considerable time. The defendant set about putting it into condition, and in connection with this undertaking it dug and piped into the aqueduct spring No. 2. This was done to increase its own supply of water, and there was no agreement or understanding with the other owners of the system regarding it. None of them shared in the expense, and some refused to do so. If the plaintiff had any rights in this spring, the burden was on him to prove it. This he has failed to do. There are not facts enough to show that the defendant intended to make a gift of this spring or any part of it to the plaintiff or any one else, nor enough to show what might, perhaps, be called a dedication of it to the purposes for which the system was established. The circumstances indicate rather strongly that the defendant sought only its own interests in what it did. Nor does it sufficiently appear, even after giving force to the intendments, that the plaintiff has acquired any prescriptive rights in this spring. The findings are strongly to the contrary. So it must be held that the defendant, on whose land this spring is situated, is the sole owner of it and the pipe connecting it with the aqueduct. But the defendant has no right to convey its waters through the aqueduct without its co-owners' consent. The spring is its private property, but the aqueduct is jointly owned, and no individual owner can put it to a different use than that for which it was established, unless all agree.

Even more clear is the defendant's title to spring No. 3. This the plaintiff piped in without leave, license, or authority. He owns the pipe he used, but he owns nothing in the spring. Nor does the fact that the water from this spring found its way into the intake pond of the brook affect this result. It may be

that the grantees in the Proctor deed acquired a right to have this water flow in its accustomed course; but any right they may have had was incidental to their rights in the brook. These are not here involved.

[10] This carries us as far as we are now required to go. Other questions are incidentally presented, and it is apparent that still others will have to be litigated or agreed upon before the rights of the parties are fully worked out, but the decree below only covered the question of title, so we now consider no other.

*The decree is altered to read as follows: It is ordered, adjudged, and decreed that the plaintiff is the owner of an undivided five-eighths interest in and to the aqueduct described in said bill of complaint and spring No. 1, so-called, and that he owns such piping as he used in connecting spring No. 3, so-called, so far as the same can be removed without material injury to the property of the defendant or the aqueduct. Let the injunction be modified accordingly.*

*And so altered, the decree is affirmed. The cause is remanded.*