VILLAGE OF BRATTLEBORO *v.* ANNA YAUVEY.

February Term, 1928.

Present: WATSON, C. J., POWERS, SLACK, MOULTON, and CHASE, JJ.

Opinion filed October 3, 1928.

*Herbert G. Barber and M. P. Maurice* for the defendant.

*Orrin B. Hughes* and *Frank E. Barber* (*C. Menzies Miller* of counsel), for the plaintiff.

CHASE, J.   The case comes from the Brattleboro municipal court where the plaintiff brought its action in contract to recover the rent it claimed due for water furnished the defendant at her dwelling-house.   Trial was by jury and both parties moved for a directed verdict.   The plaintiff's motion was granted.   To this, to the denial of her motion, and to other rulings of the court, the defendant excepted.

The essential facts were not disputed and are as follows: Years ago Isaac Hines built what was known as the Hines Aqueduct System to supply water from certain springs he owned to houses in Brattleboro.   He intended to build a reservoir to aid in the distribution of the water and to divide the system into one hundred and fifty shares, but never built the reservoir.   He sold to various people twenty shares or rights to take water from his system and kept the rest himself.   The sale of two shares to C. F. Thompson is shown by a receipt, which was introduced in evidence, reading:

"Brattleboro, Apr. 23, 1872.
C. F. Thompson Bot of Isaac Hines 2 shares of my Aqt. Water $100. to be taken from the nearest point convenient to them from my logs or from Res.   Rec. Payment   Isaac Hines"

The following now appears on this receipt:

"I hereby assign, sell and transfer the within Two Shares Water to P. Fleming for value rec.

Brattleboro, Aug. 31/77.

C. F. Thompson

Town Clerk's Office, Brattleboro, Vt. Received Jan. 24, 1925 at 10 A. M. Record Book Miscel. 1 Page 448.

Olive M. Capron Asst. Town Clerk.''

These two shares of water were used to supply the dwelling-house now owned by the defendant until the change herein-after mentioned. This house was deeded by Patrick Fleming to the defendant on March 30, 1923, together with all water and water rights connected with or then supplying the premises.

About the year 1877, George E. Crowell became the owner of all of the Hines system except such rights therein as Hines had previously sold. Mr. Crowell built and operated another water system having its source of supply in Sunset Lake and elsewhere, but not in any of the springs which fed the Hines aqueduct and used in distributing water what was, and is, known as the Chestnut Hill Reservoir. He organized water companies under different names as time went on, but they all constituted one system and for convenience the name Crowell will be used in referring to them.

After Mr. Crowell bought his interest in the Hines aqueduct, water from that system continued to be supplied to the house now owned by the defendant until the winter of 1892-93 when the Hines pipes in the vicinity of that house became frozen. Then Crowell, who had nearby a pipe line leading from Chestnut Hill reservoir, connected the house with the Chestnut Hill pipe and supplied it with water in that way instead of repairing the Hines pipe. About the same time, he turned the water from the Hines aqueduct into the Chestnut Hill reservoir and supplied all of the Hines shareholders with Chestnut Hill water instead of directly from the Hines springs. This change was made with the knowledge of the Hines share-holders, but not with their entire approval for they, including the defendant's predecessor in title, P. Fleming, brought a suit in the Windham county court of chancery in July, 1893, seeking to compel Crowell to supply them with water directly from the Hines system instead of from Chestnut Hill reservoir. This suit was pending until 1914, when it was discontinued without

the rights of anybody having been thereby determined. During the pendency of this suit, and afterwards until the plaintiff bought the Crowell water system, the house defendant now owns was furnished water from Chestnut Hill without charge; and both the defendant's predecessor in title, Patrick Fleming, at least after the suit was discontinued, and the defendant herself, after she bought the house, claimed the right to such free water service. This right was never denied by Crowell. Before the defendant bought her house, the Crowell system was enlarged and the Hines springs given up entirely as a source of supply for it. Since then the Hines aqueduct system has not been used at all.

In March, 1925, the plaintiff purchased the Crowell system with full knowledge of the rights the defendant claimed therein and subject to such rights as she owned. On the following sixth of April, it caused a written notice to be given the defendant to the effect that it had purchased the water system and that, if she continued to take water from it, she would be charged therefor at the same rates all other patrons were paying. She continued to take water, refused to pay for it, and this suit resulted. The fact that she had had the water, the reasonableness of the rate at which it was charged, and the amount, if anything, due the plaintiff, was conceded at the trial. The defendant denied the jurisdiction of the trial court on the ground that title to real estate was involved, claimed that she owned the right to be supplied without charge with the water she had received, and that the plaintiff was estopped from asserting the contrary.

From the above it will be seen that the only ground upon which the plaintiff claimed the right to recover rent for the water admittedly received by the defendant was the fact that it owned the system from which the water came. Indeed, the first allegation in its declaration sets forth its claim to such ownership. This allegation was material, and its proof vital to a recovery when this case went to trial. The suit is not in all respects like an ordinary action in contract. By No. 170 of the Acts of 1925, the plaintiff was given the power to collect its water rents as taxes may be collected and, among others, section 918 G. L. relating to the collection of taxes is expressly mentioned in this act. Subdivision III of section 918 G. L., when applied to the collection of a water rent by suit at law, pro·

vides that a defendant may not dispute the validity of such rent unless by appropriate answer or notice in writing the particular grounds are set forth whereon it is claimed the rent is invalid or unlawful, and when the grounds are set forth the burden shall be upon the plaintiff as to the validity of the rent thus put in issue. By her answer, the defendant complied with the statute and placed the burden squarely upon the plaintiff to prove its title to its water system and disprove the defendant's claim to an interest therein. It was thus required to prove the ownership it alleged.

■ This property consists in part of large reservoirs and pipe lines laid in the gound and beyond question is real estate. Much of it is actually land. Moreover, if the defendant has a right to take water from the system, that is itself an interest in real estate. *Lawrie et al.* v. *Silsby et al.,* 76 Vt. 240-251, 56 Atl. 1106, 104 A. S. R. 927; *Clement* v. *Rutland Country Club,* 94 Vt. 63-66, 108 Atl. 843. Whether or not the plaintiff owned its water system unencumbered by the defendant's claimed right to free water service was the sole disputed issue on trial.

■ Where title to land is involved the trial court, like justices of the peace, has jurisdiction only of actions of trespass where the sum in demand does not exceed twenty dollars. G. L. sections 1641, 1649, and 1658. In *Jakeway* v. *Barrett,* 38 Vt. 316, at page 326, the Court discussed the question of the jurisdiction of a justice of the peace and held that, whenever a declaration is such that the plaintiff in order to prove it must either prove or disprove title to land, a justice of the peace has no jurisdiction to try the case. See, also, *Dano* v. *Sessions,* 63 Vt. 405, 21 Atl. 922, and *Heath* v. *Robinson,* 75 Vt. 133, 53 Atl. 995.

Proof of the declaration in this case, as issue was joined, required the plaintiff to prove or disprove title to land, and the municipal court was without jurisdiction.

*Judgment reversed, and judgment for the defendant to recover her costs.*