**Loren A. Thomas and Shirley R. Thomas v. Karl Clark**

[346 A.2d 189]

No. 196-74

Present: **Smith, Daley, Larrow and Billings, JJ. and Shangraw, C.J. (Ret.), Specially Assigned**

Opinion Filed October 7, 1975

*Garfield H. Miller, Esq.,* of *Black and Plante,* White River Junction, for Plaintiffs.

*George Wenz, Esq.,* White River Junction, for Defendant.

**Billings, J.** In dispute is a Windsor Superior Court decision that the development of a spring on a servient estate subsequent to the grant by deed of the spring rights themselves

cannot serve to deprive the owner of the dominant estate of his right to use the newly developed spring.

The trial court's findings of fact, unchallenged on appeal, disclose that the defendant, Karl Clark, acquired by deed dated December 16, 1970, a small parcel of land in Sharon, Vermont. With this parcel was the right to take water from a spring on the "Welch Farm", north of the acquired parcel. Title to that part of the Welch Farm burdened by this grant now resides in plaintiffs Loren A. and Shirley R. Thomas. The spring rights originated in a 1928 warranty deed from the common grantor in each chain of title and were also contained in conveyances through the years down to and through the conveyance to defendant.

Circa 1955, a predecessor in title to plaintiffs developed a spring on the property lying to the north of the parcel now owned by defendant. Until 1955 no developed spring had existed in that area. Additionally, no dwelling existed on defendant's land prior to 1966, but in November of that year defendant's immediate predecessor in title moved a mobile home onto the property and laid a connection to the spring north of his parcel on plaintiffs' land. A dispute then arose with plaintiffs over the right to connect to this spring and is still unresolved, with the present defendant now the owner of the dominant estate and spring rights.

After trial, the Windsor Superior Court concluded that defendant had a right to take water from the spring on plaintiffs' property, even though the spring was constructed some twenty-seven years after the right was created; since it was the only spring in the area described in the deed, and no one knows of any other spring in the area.

The question for decision here is whether the trial court erred in permitting the owner of the dominant estate a right to use the spring water from a spring developed subsequent to the grant of the right. The plaintiffs cite no direct authority, nor have we discovered any, for the proposition that an owner of spring rights has no claim of use to a subsequently constructed spring, when no spring existed at the time of the grant.

There is no question that the grant of the right to take water in 1928 conveyed a right in the land itself. *Kelly* v.

494

*Alpstetten Association, Inc.,* 131 Vt. 165, 168, 303 A.2d 136 (1973). In arguing that there is no right in defendant to *use* the subsequently built spring, plaintiffs rely on *Magoon* v. *Harris,* 46 Vt. 264 (1873) and *Clement* v. *Rutland Country Club,* 94 Vt. 63, 108 A. 843 (1920). However, these cases involve a spring or springs in existence at the time of the grant of spring rights by deed, along with other disputed springs constructed subsequent to the grant of use. By their holdings, *Magoon* and *Clement* allow the dominant estate to use only the specific springs existing at the time of the grant. Here, in distinction, there was no developed spring existing at the time of the grant, and defendant asserts a right in the only spring existing.

Plaintiffs contend that allowing defendant to use the spring interferes with the lawful use of their own land. However, other than this general allegation, there are no specific instances cited of unlawful interference by defendant. In fact, the findings are to the contrary. Finding No. 13 indicates that the spring in controversy has apparently been able to provide sufficient water to serve both parties' needs. Furthermore, plaintiffs took title to their land with knowledge of the spring rights. We note here that the court also found, seemingly in contradiction, that the plaintiffs require another spring to meet their water needs. But this second spring in another area pre-existed the disputed spring and the import of the findings, read to be consistent with each other, and to support the judgment, see *Colby's Executor* v. *Poor,* 115 Vt. 147, 153, 55 A.2d 605 (1947), as we must do, is that the use of the disputed spring by plaintiffs was supplemental to the use of the other spring. There has been no showing of unlawful interference with plaintiffs' land by defendant.

■ Finally, plaintiffs assert as grounds for reversal that permitting defendant to use the spring results in unjust enrichment, since he did not participate in the cost of the original construction of the spring in 1955, nor in its upkeep since he acquired the dominant estate in 1970. We reaffirm the equitable principle that when several persons enjoy a common benefit, all must contribute rateably to the discharge of the burdens incident to the existence of the benefit. *Tullar* v. *Baxter,* 59 Vt. 467, 473, 8 A. 493 (1887). A reversal is not in

order here since application of the equitable principles of unjust enrichment does not affect the right to take the water in the first instance, but only requires contribution toward the costs of developing and mutually enjoying the use of the spring. To remedy defendant being unjustly enriched at the expense of plaintiffs, we remand the case for a determination of the proportionate costs the parties should bear in regard to the upkeep of the spring, from December 16, 1970, to the present, and for as long as defendant continues his use of the spring.

*Judgment affirmed. Cause remanded to the Windsor Superior Court for hearing on the portions, if any, of the costs the parties should bear in the development and upkeep of the spring.*