## Roger H. Bergeron and Betty J. Bergeron
### v.
## Paul Forger, Margaret J. Forger and Charles M. Emerick and Eleanor E. Emerick

[ 214 A.2d 85 ]

June Term, 1965

Present: **Holden, C. J., Shangraw, Barney, Smith and Keyser, J. J.**

Opinion Filed October 5, 1965

*M. Martin Leinwohl* for plaintiffs.

*McKee & Clewley* for defendants.

**Smith, J.** This is an equity proceeding. The plaintiffs claim the right to take water from an aqueduct leading from a spring located on the lands of the plaintiffs, but admittedly owned jointly by the defendants. Plaintiffs claim they are entitled to the water (1) by virtue of a certain deed or license, and (2) by virtue of an oral license granted to them by the defendant, Paul A. Forger. Injunctive relief is sought against the defendants from interfering with the flow of water to the premises, as well as damages from the defendants as a consequence of their interference with plaintiffs' water system.

The defendants filed an answer and cross complaint denying that the plaintiffs have any interest in the water from said spring by either record title or license, and seeking a permanent injunction against the plainntiffs from taking water from the spring as well as damages claimed to have been inflicted by the plaintiffs seeking to repair certain water lines.

Findings of Fact were made by the Chancellor below and a decree issued in favor of the defendants enjoining the plaintiffs from taking water from the spring or any line running from it, as well as prohibiting them from interfering with the defendants going upon their premises to repair and maintain their water lines.

Plaintiffs have appealed here from the order and decree of the Chancellor, as well as upon exceptions to certain of the findings of fact and failure of the Chancellor to find in accordance with requests to find made by the plaintiffs.

The undisputed facts found by the Chancellor disclose that the Forgers and the Emericks each own an undivided one-half interest in and to a certain spring of water located on the land of the Bergerons, east of the house on the premises, and which premises were formerly owned by H. J. and Blanche Carr, predecessors in title to the plaintiffs.

An aqueduct runs southerly from the spring with one pipe line extending easterly from it to the house of the Forgers. The aqueduct continues on in a generally southerly direction to the house owned by the Emericks, long known as the "Stone House," where it terminates. The Forgers still obtain their water supply from the spring in question but the "Stone House" of the Emericks no longer uses water from the aqueduct having been supplied by city water from Barre for about twenty years.

The plaintiffs claim record title to water rights from the spring by virtue of a written agreement between Clayton Collins, Admr. of the P. O. Wheaton Estate with H. J. Carr, which is set forth in Finding 4 by the Chancellor:

"WITNESSETH, as follows: viz

That the said Clayton Collins, acting as Administrator of the P. O. Wheaton estate, in consideration of the promises, agreements and provisos on the part of the said Carr hereinafter contained, does hereby agree to and with the said Carr, his heirs, executors and administrators, that he will allow the said Carr to take a stream of water from the aqueduct owned by said P. O. Wheaton estate, that supplies the stone house, so-called, on the Wheaton premises, from some point convenient to the premises of the said Carr, and will keep the main aqueduct so as to supply said drainage to said Carr's house in good and suitable repair for the period of five years.

That said Carr promises and agrees on his part that he will take said water and pay for the same at the rate of ten dollars per year for each year of said term. Said aqueduct takes water from a spring on the premises formerly owned by A. S. Parkhuurst in said Town of Barre, and it is understood and agreed that in case the spring should be unable to furnish sufficient water for users already at this time connected with said aqueduct and for the premises already being supplied with said aqueduct, then in that case the said Carr's use may be suspended or curtailed, so as not to deprive the present users of said water of any rights which they are already entitled to.

It is further agreed that in case the said Carr should be deprived of water, then the rent should be correspondingly reduced in a just and proportionate amount to the time during which such use is suspended to said Carr.

It is further agreed that the amount of water taken by said Carr shall be limited to that which will run through a pipe 1/16 inch in diameter. And in consideration of the covenants, agreements, undertakings and performances of the things herein agreed to be done and performed by the said Collins, his heirs, executors, administrators, or assigns, the said Carr, for himself, his heirs, executors, administrators and assigns, covenants to and with the said Collins, his heirs and assigns, that he will pay to the said Collins, his heirs and assigns, the sum of ten dollars per year for each and every year of said term of five years, the said ten dollars to be payable semi-annually in installments of five dollars each, on the first day of January and July respectively of each year of said term; said payments are to commence on the first day of January, A.D. 1922."

The P. O. Wheaton Estate the Chancellor found to be a predecessor in title to the lands now owned by the Emericks, and the Carrs were

predecessors in title to the plaintiffs Bergeron, which findings are unexcepted to.

The findings of the Chancellor in connection with the above agreement to which the plaintiffs have excepted, was that the agreement itself was an "implied license only as to a water supply to a tub for the use of cattle," also, that "the agreement expired in 1927 when the Carrs sold off their cattle." (Findings 4, 5, 6 and 7).

We first consider whether the Chancellor was correct in his legal conclusion in Finding 4 that the written agreement between the Wheaton Estate and the Carrs was only an implied license, to which plaintiffs excepted.

Whether an instrument is a license or a lease depends generally on the manifest intent of the parties gleaned from a consideration of its entire contents. Even though a contract purports to be a "license", if it is strictly within the definition of a lease it will be construed as such, and not as a license. *Lowell* v. *Stahan,* 145 Mass. 1, 12 N.E. 401; *United States* v. *Gratiot,* 14 U. S. 526, 10 L. Ed. 573; 32 Am. Jur. Landlord and Tenant, p. 31. Water rights and privileges are ordinarily subject to lease, as well as to the granting of a license. 56 Am. Jur. Water §257, p. 713.

The agreement before us does not purport to be a license in its terminology. It is signed, sealed and acknowledged in accordance with the statutory requirements for a transfer of real estate. The grant to the Carrs from the Wheaton Estate is the right to take a stream of water from the aqueduct then owned by the Wheaton Estate, for a term of years, upon the payment of a yearly consideration. Important in this consideration of the written agreement is that the grant is not one to take water from a spring, but one to take water from the water system of the grantor. The right to take water from a water system was held by this Court to be in itself an interest in real estate. *Village of Brattleboro* v. *Yauvey,* 101 Vt. 314, 318, 143, Atl. 295. We hold that the written agreement between the Wheaton Estate, its heirs and assigns, and H. J. Carr, his heirs and assigns, dated November 25, 1921, was a lease, and that the finding of the Chancellor that it was an implied license is in error.

In error, also, are the findings of the Chancellor that such agreement was made only for the purpose of supplying water to cattle owned by the Carrs. No such restriction appears in the agreement and such findings, therefore, are unsupported by the evidence.

We now turn to consideration of the Chancellor's finding that the

written agreement expired in 1927, which was excepted to. In our determination of the correctness of this finding, we must consider, also, several other findings of fact made by the Chancellor, to which no exceptions were taken. One such finding (No. 10) is that since 1921 the Carrs have been paying water rent to the owners of the "Stone House" property, and that the Bergerons paid water rent to the defendants, Forger and Emerick, followed by the finding (No. 11) that since about 1921 the Carrs continuously took water and paid the annual rent at the rate of ten dollars per year. Finding No. 12 is that the defendants, Forger and Emerick, at the time they acquired title to their respective properties and the spring, had knowledge that the water rights to the same ran to the Carr Property.

■ Mrs. Carr remained on the property until 1962, when she sold her premises to one Darling. Darling, in the same year, sold the Carr property to the plaintiffs. Thus, the undisputed facts are that the rent called for in the original lease between the Wheaton Estate and Carr, has been paid each year by the owners of the Carr property to the Wheaton Estate, and the subsequent owner of the Stone House property up to and including the year of 1962.

"When a tenant for a fixed term of years or for a year under a formal written lease holds over after the expiration of the term with the consent or acquiescence of the landlord, a tenancy by implication results. This begins as a tenancy at will, but when the landlord accepts the rent, it may and usually does ripen into a tenancy from year to year. In either case the tenant holds the premises subject to all covenants and conditions of the original lease, without any stipulation or bargain to that effect. This result is a legal consequence of the conduct of the parties, and does not at all depend upon the intention of the tenant." *Maniatty* v. *The Carroll Company,* 114 Vt. 168, 169, 41 A.2d 144.

In the earlier case of *Amsden* v. *Atwood,* 67 Vt. 289, at 295, 31 Atl. 448, the Court, quoting from *Kent's Com.* 112, stated:

"If the tenant holds over by consent given, either expressly or constructively, after the determination of a lease for years, it is held to be evidence of a new contract, without any definite period, and is constructed to be a tenancy from year to year. The moment the tenant is suffered by the landlord to enter on the possession of a new year, there is a tacit renovation of the contract for another year, subject to the same right of distress."

It follows that each acceptance of the rent by the Emericks and

their predecessors in title to the "Stone House," from the Carrs and later, from the Bergerons, extended this lease agreement for one year. The retention of the rent payment by the Emericks made to them by the Bergerons in 1962 extended the rights of the Bergerons to take water from the aqueduct until 1963, under the conditions expressed in the original lease. The findings of the Chancellor that the written agreement expired in 1927 was in error and was not supported by the evidence in the case, nor was it consistent with the other findings in the case to which no exceptions were taken.

The defendants place great reliance upon their contention that the aqueduct leading to the "Stone House" was in a state of decay, and that the decay of such aqueduct gave the defendants the right to revoke the rights to water claimed by the plaintiffs, citing *Small* v. *Fiske,* 42 Vt. 463, in support of their contention and the Chancellor's finding was in support of such contention. But the Small case involved an oral license, and not a written lease as we have in the instant case. Further, by the terms of the written lease it was one of the conditions of such lease that the grantors would keep the aqueduct in good and suitable repair so that the grantee could take water from it. The findings of the Chancellor as to the state of decay of the aqueduct were immaterial to the real issue to be decided and need not be considered by us.

It is apparent from the findings, transcript and briefs that plaintiffs' claim that they were also entitled to take water from the spring by virtue of an oral license from defendant Forger created some confusion in the minds of both counsel and the Chancellor on the rights here involved.

Both the written agreement and the physical facts of the case plainly show that plaintiffs' and their predecessors' right to take water was only from the aqueduct and never from the spring itself. The connection of the water line of the plaintiffs was to the water system that supplied the "Stone House" and never to the spring. Defendant Forger and his predecessors in title, while half owners of the spring, were not parties to the agreement made between the "Stone House" owners and the Carrs allowing the Carrs to take water from the aqueduct that supplied the "Stone House." Forger could not license, orally or otherwise, the plaintiffs to take water from a system not owned by him. The findings of the Chancellor relative to such claimed oral license are therefore immaterial to the issues presented and we need not consider them, or the exceptions to them.

The views expressed in this opinion make it obvious that at the time this action was commenced, in 1962, the plaintiffs had a legal right

to take water from the water system of the defendant Emerick. Paragraph (a) of the Order and Decree must, therefore, be reversed.

Paragraph (b) of such Order and Decree has not been excepted to here and it is affirmed. The entry order must be that *Paragraph (a) of the Decree is reversed; Paragraph (b) is affirmed. Cause remanded for amendment of the Decree in accordance with the views expressed in this opinion. Let the plaintiffs recover their costs in this Court.*