Filed 01/06/25

VERMONT SUPERIOR COURT
Orange Unit
5 Court Street
Chelsea VT  05038
802-685-4610
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 24-CV-04906

| Glenn Mack et al v. June Morel et al |
|---|

## ENTRY REGARDING MOTION

Title:      Motion to Dismiss Claim Against Defendant Gayle Callahan (Motion: 1)
Filer:      Cassandra S. Edson
Filed Date:      December 04, 2024

The motion is GRANTED.

Defendant Gayle Callahan has filed a motion to dismiss under V.R.C.P. 12(b)(6) based on the statute of frauds, which states that a person cannot be held liable for the debts of another without a valid, written contract.  12 V.S.A. § 181.  Plaintiffs Glenn and Katharina Mack oppose this motion and contend that the original lease terms continued after their initial expiration in April of 2024.  The Court finds that while the tenancy created by the parties' lease did continue, it did not constitute a continuation of the written lease and nothing in the complaint shows that Defendant Callahan explicitly or constructively agreed to renew or extend the written term of her guaranty.  For these reasons as explained below, the Court concludes that Defendant Callahan's motion is **Granted.**

Legal Standard for Motion to Dismiss

To determine whether a complaint survives a motion to dismiss, the Court assumes the factual allegations in the complaint are true.  *Colby v. Umbrella Inc.*, 2008 VT 20, ¶ 5.  The Court will only grant the motion if there are no facts or circumstances that would grant plaintiff relief.  Id. This is because the purpose of a motion to dismiss for failure to state a claim is "to test the law of the claim, not the facts which support it."  *Brigham v. State of Vermont*, 2005 VT 105, ¶ 11 (quoting *Powers v. Office of Child Support*, 173 Vt. 390, 395 (2002)).  Courts rarely grant motions to dismiss for failure to state a claim.  *Colby*, 2008 VT 20, at ¶ 5; see also *Kaplan v. Morgan Stanley & Co., Inc.*, 2009 VT 78, ¶ 7.  Courts generally disfavor these motions.  *Bock v. Gold*, 2008 VT 81, ¶ 4 ("Motions to

dismiss for failure to state a claim are disfavored and should be rarely granted."). For these reasons, a party seeking dismissal has a high burden to show that they are entitled to such an initial ruling. *Bock*, 2008 VT 81 at ¶ 4.

Factual Background

On October 16, 2023, the Mack Plaintiffs, Defendant Callahan, and Defendant June Morel signed a lease agreement. The subject of the lease concerned the rental of a residential rental unit at 405 Dow Road in Washington, Vermont. Defendant Morel was identified as the tenant who would occupy the dwelling unit, and in exchange she would pay $1,275 per month. The term of the lease ran from the date of signing to April 30, 2024, and contained the following language:

> 2.      Term. The term of this Rental Agreement begins on **October 16, 2023** and ends on **April 30, 2024**. Breaking the lease early will result in the Landlord not returning the security deposit to the Tenant. After the initial rental term, any extension of this lease shall only be for full 12-month terms. Any notice to terminate, by either party, must be given at least 30 days prior to the end of the term.

Pltf. Ex. 1, at 1 (emphasis in the original). Defendant Callahan's only role in the agreement was to act as a guarantor for Defendant Morel. The relevant section of the lease states:

> 13.      By co-signing this lease, **Gail Callahan** agrees and contracts to be responsible for all the terms of this lease and pay any rents, penalties or other obligations of this lease, within 5 business days, should the primary tenant fail to do so.

Pltf. Ex. 1, at 3 (emphasis in the original).

The complaint indicates that Defendant Morel remained in the dwelling unit after April 30, 2024 and continued to pay rent to the Mack Plaintiffs. Neither the Macks, nor Morel, nor Callahan exchanged any further writings, agreements, or amendments. Morel remains in the dwelling unit, but she stopped paying rent on or about September 1, 2024 and is presently the subject of this ejectment action and a pending default judgment motion.

Legal Analysis

The legal question on which Defendant Callahan's motion revolves is whether the continuation of Morel's tenancy after April 30th effectively continued the written lease agreement and by extension its terms, specifically section 13, which obliges Callahan to act as guarantor for

Morel's primary rent obligations. Callahan argues that she is not obliged because the written lease ended on April 30, 2024, and her obligations were never renewed in writing.

In their opposition, the Macks point to Vermont case law that indicates when a tenant holds over past the end of a written lease term, the tenancy becomes an at-will tenant but converts to a periodic tenancy once the tenant continues to honor their lease obligations and Landlord accepts. *Maniatty v. Carroll Co.*, 114 Vt. 168, 169 (1945). In such a case, "the tenant holds the premise subject to all covenants and conditions of the original lease, without any stipulation or bargain to that effect." Id. While the resulting tenancy is called a periodic tenancy, it is also a tenancy by consent. As the Vermont Supreme Court has noted, the evidence of the "new tenancy" arises from the consent that the landlord gives, "either expressly or constructively," after the tenant holds over beyond the original term. *Bergeron v. Forger*, 125 Vt. 207, 211–12 (1965).

The problem with the Macks' position in regards to Callahan's obligation is that it is not clear whether the "new tenancy" carries over as a written lease, or if the prior lease terms maintain their force on the parties through implication and the common law. As *Bergeron* notes, the holdover circumstance creates a "new contract." Id. Such a new contract is not a written contract but a legal construct that adopts and applies the prior written terms through the parties' course of conduct. At least one other trial Court has concluded that this means the new contract is not a written lease as that term is used under 9 V.S.A. § 4467. *37 Perry Street, LLC v. Seaberg*, Dckt. No 23-CV-1014, 2023 WL 2605867, at *2 (Apr. 12, 2023) (Tomasi, J.).

The Court finds Judge Tomasi's reasoning in *37 Perry Street, LLC*, persuasive in ways that go beyond the limited scope of what a "written lease" constitutes under Section 4467. From its elements, it is evident that a periodic tenancy differs from a written lease in several ways. First, there is no writing to memorialize the agreement of the parties and show a meeting of the minds as well as an express willingness to be bound by the terms outside of the original lease term. Second, the periodic tenancy arises by implication and common law through the subsequent actions of the parties. Tenant stays in the dwelling unit and continues to pay the rent. Landlord accepts the rent and does not move to end the tenant's possession. Third, the periodic tenancy has qualities strikingly similar to equitable estoppel in that a party who carries forward as if the tenancy has continued cannot later disclaim those terms on which the other party has acted in reliance. See *In re Griffin*, 2006 VT 75, ¶ 18 (describing the standards for equitable estoppel). Therefore, the Court concludes that under the concept of a periodic tenancy, there is no written contract for purposes of

the statute of frauds. 12 V.S.A. § 181(2). By extension, the Court finds that there was no written agreement in this case after April 30, 2024 to bind Defendant Callahan as guarantor to the terms of the original lease.

In addition to the lack of a written lease, the facts of this case illustrate why the concept of a periodic tenancy does not neatly apply to extending a guarantor's obligation under a fixed term lease. Defendant Callahan agreed to act a guarantor for Morel's rent and compliance obligation under the original lease terms for a fixed period of time. When the lease transferred to a periodic tenancy, Callahan took no action to secure or confirm her continuing guaranty. In this respect, neither did the Macks. There is no evidence that Callahan acted one way or the other, or whether she was even aware of the renewal.[1] Plaintiff's argument is that Callahan remained as a guarantor because the lease terms renewed through the periodic tenancy, but as noted above, this legal conclusion derives from the actions of Morel and the Macks. There is no evidence that Callahan assented to this renewal or took action that would constructively renew her separate obligation. There was no action on her part that created reliance in the Macks or that indicated an intent to continue the term.

As such, the Court cannot find under the allegations in the complaint that there was any action that would be necessary to demonstrate that Callahan intended or was effectively acting to renew and continue her guaranty with the new lease. The Court cannot extend or interpret the actions of either Morel or the Macks to constitute such consent for Callahan as their actions did not involve or benefit Callahan, or even put her on formal notice in any manner. For these reasons, the Court finds that there is no constructive, common law, or equitable basis to extend Callahan's guaranty beyond the written term of April 30, 2024.

**<u>ORDER</u>**

Based on the foregoing analysis, the Court concludes that Defendant Gayle Callahan is entitled to dismissal under V.R.C.P. 12(b)(6) for the claims for money damages against her based on the lack of a written lease, agreement, or contract term binding her to make contribution on behalf of her co-defendant June Morel. 12 V.S.A. § 181(2). The Court finds that the written lease in this case expired on April 30, 2024. While the terms of the lease continued to be applicable to the Mack Plaintiffs as landlords and Defendant Morel as tenant, this does not extend under the common law

---

[1] Although there is no evidence, the Court's analysis does not depend upon this fact and assumes for purposes of the motion to dismiss that Defendant was aware of the on-going lease relationship between Morel and the Macks.

or equitable principles of a periodic tenancy to third-party guarantors, like Callahan. As such there was no written document, and the statute of frauds prevents the enforcement against Callahan of an implied or constructive obligation.

In addition, the record shows that there was no action by Callahan to indicate an intent on her part to renew or continue the guarantor term or to create a constructive obligation that might create equitable estoppel based on any reliance or receipt of benefits in an implied renewal. See *In re Griffin*, 2006 VT 75, ¶ 18 (noting that a party intending their conduct to be acted upon by another who is ignorant of the true facts, where the other acts in reliance on this to their detriment, may give rise to equitable estoppel).

The claims against Defendant Callahan are **Dismissed,** and Defendant Callahan is **Dismissed** as a party to the present matter.

Electronically signed on 1/3/2025 7:31 PM pursuant to V.R.E.F. 9(d)

_____
Daniel Richardson
Superior Court Judge